No. 18-4122

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

KANE COUNTY, UTAH,
*Plaintiffs/Appellees*,

v.

UNITED STATES OF AMERICA,
*Defendant/Appellee*,

and

SOUTHERN UTAH WILDERNESS ALLIANCE, et al.,
*Applicant-Defendant-Intervenors-Appellants.*

Appeal from the United States District Court for the District of Utah
No. 2:08-cv-00315 (Hon. Clark Waddoups)

**PETITION BY UNITED STATES OF AMERICA
FOR REHEARING EN BANC**

JONATHAN D. BRIGHTBILL
ERIC GRANT
*Deputy Assistant Attorneys General*
JAMES A. MAYSONETT
*Attorney*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 305-0216
james.a.maysonett@usdoj.gov

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................iii

GLOSSARY .................................................................... v

INTRODUCTION .............................................................. 1

STATEMENT OF THE CASE.................................................... 2

      A.    Statutory and regulatory background........................................... 2

           1.    The Quiet Title Act............................................. 2

           2.    R.S. 2477...................................................... 2

      B.    Procedural background ................................................ 3

ARGUMENT.................................................................. 4

I.    Rehearing en banc is urgently needed because the majority's decision has left this area of the law badly confused. ............................ 4

II.    This case is "of exceptional importance" because it will have a profound effect on litigation surrounding the United States' property rights throughout the West. ......................... 8

III.    The majority erred in concluding that SUWA is entitled to intervene as of right in a property rights case where it claims no interest in the property................................................... 10

      A.    The majority erred in holding that the United States might not adequately represent SUWA's interests...................... 10

      B.    The majority erred by holding that SUWA's environmental interests were sufficient to justify its intervention in a quiet title case............................. 13

      C.    The majority erred by holding that SUWA was not required to demonstrate Article III standing. ............................ 16

CONCLUSION ............................................................................ 17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF DIGITAL SUBMISSION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Arizona v. California*,
530 U.S. 392 (2000) .............................................................. 15

*Block v. North Dakota*,
461 U.S. 273 (1983) ................................................................ 2

*Clapper v. Amnesty International USA*,
133 S. Ct. 1138 (2013) ......................................................... 13

*Diamond v. Charles*,
476 U.S. 54 (1986) ................................................................ 15

*Donaldson v. United States*,
400 U.S. 517 (1971) .............................................................. 15

*Kane County v. United States*,
597 F.3d 1129 (10th Cir. 2010) ....................................... 3, 7, 12

*Kane County v. United States*,
772 F.3d 1205 (10th Cir. 2014) ............................................ 3, 6

*San Juan County v. United States*,
503 F.3d 1163 (10th Cir. 2007) ..................... 1, 4–6, 11, 14–16

*Sierra Club v. Hodel*,
848 F.2d 1068 (10th Cir. 1988) ........................................... 13

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009) .............................................................. 15

*SUWA v. BLM*,
425 F.3d 735 (10th Cir. 2005) ............................................ 8, 14

*Town of Chester v. Laroe Estates, Inc.*,
137 S. Ct. 1645 (2017) .................................................. 7, 8, 16

*Utah Ass'n of Counties v. Clinton*,
    255 F.3d 1246 (10th Cir. 2001) ........................................................... 11

*Western Energy Alliance v. Zinke*,
    877 F.3d 1157 (10th Cir. 2017) ........................................................... 11

## Statutes

28 U.S.C. § 2409a(a) .............................................................................2, 15

43 U.S.C. § 932 ........................................................................................ 2

Pub. L. No. 94-579 ...............................................................................3, 14

## GLOSSARY

FLPMA             Federal Land Policy and Management Act

R.S. 2477         Revised Statutes 2477

SUWA              Southern Utah Wilderness Alliance

## INTRODUCTION

The United States respectfully petitions for rehearing en banc of the panel's June 25, 2019 decision.

This case is a quiet title action brought against the United States by Kane County, Utah.[*] Kane County claims certain rights-of-way over federal public land under the 1866 statute commonly known as "R.S. 2477." The central question presented by this appeal is whether the interest of the Southern Utah Wilderness Alliance ("SUWA") in the environment is sufficient to justify its intervention in this case, even though this is a property rights dispute between Kane County and the United States.

The Court has answered this question three times since 2007. Twice before it denied SUWA intervention as of right—once in this case in 2010 and once in the en banc decision in *San Juan County v. United States*, 503 F.3d 1163 (10th Cir. 2007). But in its June 25, 2019 decision, a majority of the panel departed from that precedent and, adopting the reasoning of Judge Ebel's dissent in *San Juan County*, held that SUWA is entitled to intervention as of right. Chief Judge Tymkovich dissented.

_____

[*] Kane County and the State of Utah hold the disputed rights-of-way as joint tenants. We refer here solely to Kane County for ease of reference.

By reversing course from the existing precedent, the majority's decision has left this area of the law unsettled and unclear. The Court should rehear this case en banc to secure the uniformity of its precedent. Rehearing is also merited because the majority's decision threatens to impose significant, unnecessary, and unjustified burdens on the United States in the extensive litigation surrounding federal public lands in the West.

## STATEMENT OF THE CASE

### A. Statutory and regulatory background

#### 1. The Quiet Title Act

The Quiet Title Act provides that the "United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a). The Act is the "exclusive means by which adverse claimants [may] challenge the United States' title to real property." *Block v. North Dakota*, 461 U.S. 273, 286 (1983).

#### 2. R.S. 2477

In 1866, Congress provided that the "right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253 (formerly codified at 43 U.S.C. § 932). That statute is commonly referred to as "R.S. 2477." Congress

repeated R.S. 2477 in 1976, but it preserved "any valid" right-of-way "existing on the date of approval of this Act." Pub. L. No. 94-579, §§ 701(a), 706(a), 90 Stat. 2743, 2786, 2793.

### B.   Procedural background

In 2008, Kane County sued the United States under the Quiet Title Act, claiming that it held title to fifteen rights-of-way under R.S. 2477. SUWA moved to intervene as of right, and the district court denied that motion. This Court affirmed the denial of intervention. *Kane County v. United States*, 597 F.3d 1129, 1130 (10th Cir. 2010).

After a bench trial, the district court held that Kane County and the State of Utah had proved their claims to twelve rights-of-way, and it resolved the scope of those rights-of-way. The United States appealed the district court's decision regarding scope, and this Court reversed in part. *Kane County v. United States*, 772 F.3d 1205 (10th Cir. 2014). The scope of three rights-of-way is the only matter left pending in the case.

SUWA renewed its motion to intervene in 2017. Treating that motion as a motion for reconsideration, the district court denied intervention. Docket No. 321 (Aug. 21, 2018). SUWA appealed.

On June 25, 2019, a panel of this Court reversed, holding that SUWA was entitled to intervene as of right. Chief Judge Tymkovich dissented.

## ARGUMENT

I. **Rehearing en banc is urgently needed because the majority's decision has left this area of the law badly confused.**

The Court has twice before denied SUWA intervention in these R.S. 2477 quiet title actions. The majority's decision reverses course and grants SUWA intervention as of right, and that decision cannot be reconciled with either the Court's 2007 decision in *San Juan County* or its 2010 decision in this case. Rehearing is urgently needed to resolve this confusion. *See* Fed. R. App. P. 35(a)(1).

The majority's decision in this case necessarily conflicts with the plurality decision in *San Juan County* because it expressly adopts Judge Ebel's dissent in that case. Opinion at 24 ("Opinion") ("We now adopt this reasoning"). In *San Juan County*, a plurality of the en banc Court affirmed the district court's denial of SUWA's intervention as of right on the grounds that SUWA had not overcome the presumption that the United States would adequately represent its interests. 503 F.3d at 1207. Judge Ebel dissented from that conclusion and would have held instead that the United States was not entitled to a presumption of adequate representation (because the United States "will have to take . . . multiple interests into account"), and that SUWA had "met its minimal burden" to show that "there is a possibility that the United States may not adequately represent" its interests. *Id.* at 1226–32. In particular,

Judge Ebel would have held in *San Juan County* that the interests of the United States and SUWA diverged because a quiet title action is not merely "a simple binary determination" of title but also includes the "more nuanced" question of the "scope" of these rights-of-way. *Id.* at 1228.

Here, the majority explicitly draws both its reasoning and conclusion from that dissent. Opinion at 18 n.17, 24–27 (citing Judge Ebel's dissent six times). Like the dissent in *San Juan County*, the majority here is convinced that, even if "the question of title is a 'binary' determination," "scope is much more 'nuanced.'" Opinion at 24 (citing Judge Ebel's dissent, 503 F.3d at 1228). Like the dissent in *San Juan County*, the majority here holds that the United States is not entitled to a presumption of adequate representation because it represents "broad-ranging and competing interests." Opinion at 27 (citing Judge Ebel's dissent, 503 F.3d at 1230). And like the dissent in *San Juan County*, the majority here ultimately concludes that SUWA has met its "minimal" burden of showing that the United States might not adequately represent SUWA's interests. Opinion at 30–31.

All of these holdings flatly conflict with the decision of the plurality in *San Juan County*. The majority here downplays that conflict, suggesting that this case has entered a new phase, moving from the "binary determination" of title to the "nuanced" determination of scope. Opinion at 18 n.17, 25. But that

distinction is unconvincing because scope is inherent in a quiet title action, and it has always been at issue in this case—as Judge Ebel himself has previously acknowledged. *See San Juan County*, 503 F.3d at 1228 (observing that "this litigation . . . will unavoidably affect . . . the nature and scope of that right-of-way if it does exist"). Indeed, scope and title are part of the same question; a court cannot quiet title to property without also defining the scope of the right in that property. In fact, many of the issues of scope in this case were litigated —and resolved by this Court—immediately after the Court affirmed the denial of SUWA's intervention in 2010. *Kane County*, 772 F.3d 1205.

The majority's reliance on Judge Ebel's dissent in *San Juan County* highlights the sharp disagreement within the Court's precedent on these issues. Although a plurality of the en banc court affirmed the denial of intervention in *San Juan County*, that decision was delivered in four separate opinions, none of which commanded a majority. Instead, the Court split deeply on several important issues.  Most notably, seven judges concluded that SUWA had demonstrated the "impaired interest" required to justify intervention, while six would have held that SUWA's environmental interest could not be impaired because it has "no logical or causal connection" with the "dispute over land ownership" presented by a quiet title action. 503 F.3d at 1201, 1207–10.

The majority's decision also conflicts with this Court's 2010 decision in this case, which affirmed the district court's denial of SUWA's intervention. *Kane County*, 597 F.3d 1129. By reaching a conclusion opposite from what the Court reached in 2010 and by adopting a dissenting opinion from *San Juan County*, the majority's decision leaves the Court's precedent entirely unsettled. Adding to the confusion, Chief Judge Tymkovich's lengthy dissent embraces the reasoning proposed by the six dissenting judges in *San Juan County* who would have held that SUWA's environmental interests are insufficient to justify intervention in a quite title action. Dissent at 5–11, 15 n.3.

Taking all of this together—the four separate opinions in *San Juan County*, the majority's reversal of the Court's 2010 decision and its explicit adoption of Judge Ebel's *San Juan County* dissent, and the Chief Judge's lengthy dissent in the present case—the Court's precedent is now badly fractured. These decisions cannot be reconciled, and no consistent principles of law can be drawn from them. The Court should grant rehearing en banc in order to decide between these conflicting theories and resolve the underlying legal questions once and for all.

The Court should also grant rehearing en banc here so that it can reevaluate its precedent in light of the Supreme Court's recent decision in *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017). There, the Supreme

Court abrogated the "piggyback" rule for intervenor standing that this Court had adopted in *San Juan County*. *Id.* at 1648; *see also* Opinion at 11; Dissent at 4. The panel majority's decision, as the dissent observes, is "a return to the abrogated reasoning of *San Juan County* in violation of clear, binding precedent." Dissent at 5. Rehearing en banc is necessary to reconcile the Court's precedent with this Supreme Court's decision in *Town of Chester*.

## II. This case is "of exceptional importance" because it will have a profound effect on litigation surrounding the United States' property rights throughout the West.

Rehearing en banc is also warranted because this proceeding involves a question of exceptional importance, *see* Fed. R. App. P. 35(a)(2), as the panel's decision and the consequent confusion in the law are already imposing significant additional costs and burdens on courts and parties. The litigation affected by this question of intervention is extensive: the United States faces claims for R.S. 2477 rights-of-way throughout the West, including more than 12,000 claims in Utah alone. That litigation is not just extensive, it is difficult and resource-intensive because there are no written records of the vast majority of these claimed rights-of-way: these claims could be asserted under R.S. 2477 without any "administrative formalities," and so the pre-1976 uses of the rights-of-way must usually be determined by witness testimony at trial. *SUWA v. BLM*, 425 F.3d 735, 741 (10th Cir. 2005).

Allowing SUWA to intervene as of right in these actions necessarily renders their resolution more difficult and more time-consuming for the parties whose property rights are actually at issue—and for the courts—by expanding the scope of discovery, requiring additional witness preparation, lengthening trials, and complicating settlement negotiations. The United States submits that those additional costs are unjustified and unnecessary because SUWA's environmental interests are not at issue in these title actions and are not likely to be injured by their resolution.

But even if the en banc Court were to ultimately affirm SUWA's intervention, the continuing confusion created by the lack of clarity in the Court's precedent creates its own burdens and costs. In the separate but related set of consolidated cases known as *Kane 2*, for example, the United States, Kane County, and the State of Utah had been set to commence trial in early August of this year. *See* Docket No. 549, at 36, *Kane County v. United States*, No. 2:10-cv-1073 (D. Utah Sept. 5, 2019). That trial was meant to be a "bellwether" trial, which the court and the parties hoped would finally resolve several of the important legal issues that are common to many of these claims.

As a direct consequence of the majority's decision here, however, the district court was forced to delay that trial until February 2020. Unsurprisingly, SUWA renewed its motion to intervene in *Kane 2* based on the panel's

decision. The parties had no real choice but to agree to allow SUWA to participate, at least on a contingent basis until the Court resolves this petition for rehearing. Therefore, a continuance was necessary to allow SUWA to prepare for trial. The parties, however, continued to litigate the exact terms of SUWA's participation, which has now culminated in a decision by the district court denying SUWA intervention as of right on several grounds, including SUWA's lack of Article III standing and the adequate representation of SUWA's interests by the United States. *Id*. at 34–37. The confusion in the Court's precedent continues to generate significant practical problems and additional costs and burdens. Rehearing en banc would put an end to that by providing clarity.

## III. The majority erred in concluding that SUWA is entitled to intervene as of right in a property rights case where it claims no interest in the property.

### A. The majority erred in holding that the United States might not adequately represent SUWA's interests.

First, the majority erred when it held that the United States might not adequately represent SUWA's interests. In two previous decisions—in *San Juan County* in 2007 and in this case in 2010—the Court reached the opposite conclusion. In both of those decisions, the Court applied the presumption that the government would adequately represent its citizens' interests, holding that SUWA had not overcome that presumption because (in this kind of narrow

property rights case) the interests of SUWA and the United States are aligned: "the Federal Defendants had only a single litigation objective—namely, defending exclusive title to the road—and SUWA could have had no other objective regarding the quiet-title claim." *San Juan County*, 503 F.3d at 1206.

The majority abandoned that precedent here and instead adopted the reasoning from Judge Ebel's dissent in *San Juan County*. But the justifications that the majority gave to depart from the Court's precedent are not convincing. Most fundamentally, the majority believed that the United States could not represent SUWA's narrow interest in the environment because the government must weigh a "much broader range of interests." Opinion at 25–26. But the cases relied on by the majority were not quiet title actions—they were challenges to the federal government's management of public lands or its designation of national monuments. *See, e.g., Western Energy Alliance v. Zinke*, 877 F.3d 1157 (10th Cir. 2017); *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2001). In those cases, it was undisputed that the United States was obligated to manage those public lands for multiple uses. *See, e.g., Western Energy Alliance*, 877 F.3d at 1169. Here, in contrast, the United States and SUWA share a single identical goal: to ensure the narrowest grant of property to Kane County consistent with applicable law and relevant evidence. The majority compounded this error by refusing to apply the same presumption of

adequate representation applied by the Court in its previous decisions. Opinion at 22; *see also* Dissent at 17.

Similarly, the majority mistakenly concluded that this case was different because it now involves "nuanced" questions of the scope, when (as discussed above) scope is inherent in a quiet title action and has always been at issue in this case. Contrary to the majority's decision, there is no evidence that the United States is likely to stop defending its property interests and "capitulate" to Kane County by settling these claims. *See* Opinion at 28–29. In fact, there are no ongoing settlement talks in this case. As the dissent notes, moreover, "SUWA's speculation that the United States will be less than zealous to defends its title cannot explain (1) why the United States has not settled this case two years into the new presidential administration, (2) why the parties did not request further stays to continue negotiation after the stay expired last year, or (3) why extensive discovery and depositions have continued in other pending road disputes between the parties." Dissent at 21. SUWA levelled the same accusations against the two prior administrations, and the Court rejected them in this very case in 2010. *Kane County*, 597 F.3d at 1130, 1135.

In short, this Court has previously held that the United States adequately represents SUWA's interests in the context of a quiet title action, and nothing has changed. The majority erred in departing from that precedent.

**B.** **The majority erred by holding that SUWA's environmental interests were sufficient to justify its intervention in a quiet title case.**

Second, the majority erred in holding that SUWA's environmental interests were sufficient to justify its intervention in a property rights dispute where it claims no property interest. *See* Opinion at 10–15, 20–21. In order to intervene as of right here, SUWA had to satisfy the requirements of both Federal Rule 24(a) and of Article III (as discussed in Section III.C below) by showing that its environmental interests may be injured by the resolution of this case. *See Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1147 (2013).

But SUWA cannot make that showing because the connection between its environmental interests and this property rights case is too tenuous. This is a dispute about legal title to property, not about how roads or the surrounding public lands will be managed. The legal recognition of a right-of-way by the court will have no effect on the environment. Nor will it necessarily result in any change in the use of these lands. Rights-of-way granted under R.S. 2477 are limited to the then-existing uses of the roads as of 1976 (although the courts may widen the historic rights-of-way under certain limited circumstances). *Sierra Club v. Hodel*, 848 F.2d 1068, 1083 (10th Cir. 1988), *overruled on other grounds by Village of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992). Even after these rights-of-way are recognized, the law will still prohibit

Kane County from improving these roads or making any other changes that could significantly affect the surrounding lands unless it first consults with the federal government. *SUWA v. BLM*, 425 F.3d at 748–49. This case, moreover, will not create any *new* property rights; it will merely recognize rights-of-way that Kane County has held since at least 1976. Nor will this case change the legal status of any nearby national monument lands or wilderness study areas, or the uses of these public lands, because these lands and designations have always been "subject to valid existing rights." Pub. L. No. 94-579, § 701(h), 90 Stat. at 2786.

This is, in short, a case about legal title and just legal title. As six judges correctly observed in *San Juan County*, there "can be no logical or causal connection between" SUWA's interest in the environment and this "dispute over land ownership." *San Juan County*, 503 F.3d at 1208. As the panel dissent notes, the majority was only able to connect this case to a harm to SUWA's environmental interests with a long chain of speculation: "SUWA merely conjectures that (1) the United States will not zealously defend its title to the relevant roads, (2) the title adjudication will thus lead to an appreciably different outcome regarding pre-1976 uses, (3) this appreciable difference will lead Kane County to open the relevant roads to greater vehicular traffic than it would have otherwise, and finally (4) the greater vehicular traffic will, at the

margin, cause aesthetic environmental injury to SUWA members who may return to the particular areas in the future." Dissent at 7.

This "chain of events relies on a patchwork of assumptions and possibilities." *Id*. The law requires more to establish an "impaired interest." SUWA was required to show that a potential harm to its environmental interests is "imminent." The kind of allegations of a "possible future injury" that SUWA has relied on here are simply not sufficient. *Summers v. Earth Island Institute*, 555 U.S. 488, 499 (2009).

Fundamentally, SUWA has no role in this quiet title action because it claims no ownership in the disputed property and alleges no harm to its property rights. *See Arizona v. California*, 530 U.S. 392, 419 n.6 (2000). To intervene here, SUWA had to show that it had a "significantly protectable interest," *Donaldson v. United States*, 400 U.S. 517, 531 (1971), and SUWA's environmental interests cannot satisfy that requirement because they enjoy no "legal protection" under the Quiet Title Act, *Diamond v. Charles*, 476 U.S. 54, 75 (1986) (O'Connor, J., concurring in part and concurring in the judgment). The Quiet Title Act strictly limits the kind of property claims that may be brought and imposes strict requirements on the plaintiffs who bring them, 28 U.S.C. § 2409a(a), (d), and the majority erred in disregarding those strict limits.

Moreover, the defenses asserted by SUWA here are, as required by Rule 24(c), the United States' defenses to its own title, not defenses unique to SUWA. Under the panel majority's standard for intervention here, taken to its logical extreme, any hiker or off-road vehicle enthusiast with an interest in these lands could be entitled to intervene as of right in this litigation. That is not consistent with the requirements of Rule 24 or the Quiet Title Act. The United States' defense of its own title should not complicated by the intervention of third parties, like SUWA, that do not claim their own title.

### C. The majority erred by holding that SUWA was not required to demonstrate Article III standing.

Third, the majority erred in holding that SUWA was not required to demonstrate Article III standing. The majority here and the plurality in *San Juan County* held that SUWA could "piggyback" off the United States' standing. Opinion at 12; *San Juan County*, 503 F.3d at 1171–72. But the Supreme Court has abrogated that piggyback rule, "at the least" when an intervenor "seeks additional relief beyond that which the plaintiffs requests," and it was error for the majority to continue to apply it. *Town of Chester*, 137 S. Ct. at 1648. In any event, whether the requirements of Article III standing apply to all intervenors or not, they should have been applied to SUWA given SUWA's long history of seeking relief different from the relief sought by the United States and of presenting additional defenses, as described at length in

the district court's recent decision in the companion case, *Kane 2*. Docket

No. 549, at 20–22, 24–28, *Kane County v. United States*, No. 2:10-cv-1073 (D.

Utah Sept. 5, 2019. As discussed above, SUWA has not made that showing.

## CONCLUSION

The Court should rehear this case en banc to ensure the uniformity of its

precedent and because this case involves questions of exceptional importance.

Respectfully submitted,

*/s/ James A. Maysonett*
JONATHAN D. BRIGHTBILL
ERIC GRANT
*Deputy Assistant Attorneys General*
JAMES A. MAYSONETT
*Attorney*
September 18, 2019          Environment and Natural Resources Division
90-1-5-12500               U.S. Department of Justice

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(c)(2)

I hereby certify that this petition complies with the requirements of Fed. R. App. P. 32(c)(2) because it has been prepared in 14-point Calisto MT, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because it contains 3,838 words, excluding the parts of the brief exempted under Rule 32(f), according to the count of Microsoft Word.

*/s/ James A. Maysonett*
JAMES A. MAYSONETT

Counsel for Defendant/Appellee
United States of America

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Windows Defender (version 1.301.1645.0), and according to the program are free of viruses.

*/s/ James A. Maysonett*
JAMES A. MAYSONETT

Counsel for Defendant/Appellee
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2019, I electronically filed the

foregoing brief with the Clerk of the Court for the United States Court of

Appeals for the Tenth Circuit by using the appellate CM/ECF system.

The participants in the case are registered CM/ECF users and service

will be accomplished by the appellate CM/ECF system.

/s/ James A. Maysonett
JAMES A. MAYSONETT

Counsel for Defendant/Appellee
United States of America