---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

---

**KANE COUNTY, UTAH** and **STATE OF UTAH**,
*Plaintiffs-Appellees*

v.

**UNITED STATES OF AMERICA**,
*Defendant-Appellee*

and

**SOUTHERN UTAH WILDERNESS ALLIANCE, et al.**,
*Proposed Defendant Intervenor-Appellant*

---

On Appeal From The United States District Court For The District Of Utah
Honorable Clark Waddoups, Civil No. 2:08-cv-0315 CW

---

## APPELLEES KANE COUNTY, UTAH AND STATE OF UTAH'S
## PETITION FOR PANEL REHEARING
## AND REQUEST FOR EN BANC REHEARING

Sean D. Reyes, #7969
Utah Attorney General
Anthony L. Rampton, #2681
Kathy A.F. Davis, #4022
David Halverson, #15853
P.O. Box 142477
Salt Lake City, Utah 84114
Telephone: (801) 537-9045
arampton@agutah.gov
kathydavis@agutah.gov
dhalverson@utah.gov
*Attorneys for the State of Utah*

HOLLAND & HART LLP
Shawn T. Welch, #7113
Richard D. Flint, #7525
Chelsea J. Davis, #16436
222 So. Main Street, Ste. 2200
Salt Lake City, Utah 84101
Telephone: (801) 799-5800
stwelch@hollandhart.com
rdflint@hollandhart.com
cjdavis@hollandhart.com
*Attorneys for Plaintiff-Appellee Kane
County, Utah*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

GLOSSARY ...................................................................................... iiv

INTRODUCTION ................................................................................ 1

BACKGROUND .................................................................................. 4

A.    Title To Utah's R.S. 2477 Highway Rights-of-Way Is Owned By The State and County. ............................................................................. 4

B.    The Quiet Title Act Is A Narrow Waiver Of The United States' Sovereign Immunity For The Single Purpose Of Adjudicating Title. ............................ 5

**I.    The Majority Erred In Finding That SUWA, With No Title To Claim Or Defend, Has Standing To Litigate A Title Suit. ................................... 6**

**II.    The Majority's Decision Conflicts With This Court's Decisions In San Juan County And Kane County. ................................................. 9**

CONCLUSION .................................................................................. 14

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .............................. 16

CERTIFICATE OF DIGITAL SUBMISSION ........................................... 17

CERTIFICATE OF SERVICE .............................................................. 18

ADDENDUM - OPINION

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*,
461 U.S. 273 (1983)..................................................................5

*Donaldson v. United States*,
400 U.S. 517 (1971)................................................................12

*Hollingsworth v. Perry*,
570 U.S. 693 (2016)..........................................................1, 7, 12

*Kane County (1) v. United States*,
No. 2:08-CV-0315, 2013 WL 1180764 (D. Utah Mar. 20, 2013)...................5, 6

*Kane County v. United States*,
597 F.3d 1129 (10th Cir. 2010) .................................................2, 9

*Kane County v. United States*,
772 F.3d 1205 (10th Cir. 2014) .............................................3, 4, 5, 6

*Kinscherff v. United States*,
586 F. 2d 159 (10th Cir. 1978) ....................................................5

*Pub. Serv. Co. of New Mexico v. Barboan*,
857 F.3d 1101 (10th Cir. 2017) ...................................................13

*S. Utah Wilderness All. v. Bureau of Land Management*,
425 F.3d 735 (10th Cir. 2005) .....................................................4

*Safe Streets All. v. Hickenlooper*,
859 F.3d 865 (10th Cir. 2017) .....................................................2

*San Juan County v. United States*,
420 F.3d 1197 (10th Cir. 2005) ...............................................10, 11

*San Juan County v. United States*,
503 F.3d 1163 (10th Cir. 2007) (en banc) ...................................passim

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)........................................................passim

*Statewide Masonry v. Anderson*,
 511 F. App'x 801 (10th Cir. 2013) ............................................................12, 13

*Sw. Four Wheel Drive Ass'n. v. Bureau of Land Management*,
 363 F.3d 1069 (10th Cir. 2004) ...........................................................................5

*The Wilderness Soc'y v. Kane County*,
 632 F.3d 1162 (10th Cir. 2011) (en banc) ..........................................................9

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
 137 S. Ct. 1645 (2017)...........................................................................1, 7, 12

*Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n*, 787 F.3d 1068 (10th Cir. 2015)...................................10, 13

*Western Energy Alliance v. Zinke*,
 877 F.3d 1157 (10th Cir. 2017) ..........................................................................2

*WildEarth Guardians v. U.S. Forest Serv.*,
 573 F.3d 992 (10th Cir. 2009) ..........................................................................10

## STATUTES

43 U.S.C. § 1701 note .................................................................................4

Federal Land Policy Management Act of 1976, Pub. L. No. 94-579, §
 706(a), 90 Stat. 2743 ...............................................................................4

Mining Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253 (1866) ..............passim

Quiet Title Act, 28 U.S.C § 2409a...................................................................passim

Utah Code Ann. § 72-3-103(3) .................................................................4

Utah Code Ann. § 72-3-105(3) .................................................................4

## OTHER AUTHORITIES

Fed. R. App. P. 35 & 40.............................................................................1

Fed. R. Civ. P. 24(a)(2).............................................................................13

# GLOSSARY

APA                         Administrative Procedures Act

Kane County                 Plaintiff-Appellee Kane County, Utah

State                       Plaintiff-Appellee State of Utah

SUWA                        Proposed-Intervenor Defendants Southern Utah
                            Wilderness Alliance and the Wilderness Society

United States               Defendant-Appellee United States of America

QTA                         Quiet Title Act

## INTRODUCTION

On June 25, 2019, a divided panel of this Court granted intervention as of right to SUWA in the narrow, remanded end of this federal quiet title lawsuit. The panel's decision is remarkable in that SUWA does not claim title, this Court previously denied SUWA's intervention twice in this same lawsuit, and the last time a divided panel of this Court granted SUWA intervention in a similar quiet title suit in which SUWA also claimed no title, it was reversed upon en banc review.

Even more remarkable is the fact that in the years since this Court last denied SUWA's attempt to intervene, the United States Supreme Court has restricted the range of parties with standing and has directly held that a party must have its own standing to intervene. Against all of this, the panel majority held that SUWA has standing and should be granted intervention as of right at the conclusion of a title suit where SUWA claims no title.

Pursuant to Fed. R. App. P. 35 & 40, Kane County and the State respectfully petition for panel rehearing and request rehearing en banc. The panel decision conflicts with the United States Supreme Court decisions in *Hollingsworth v. Perry*, 570 U.S. 693 (2016), *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017), in that

proposed intervenor SUWA lacks any legal interest that may be impaired in this title suit and therefore lacks standing to appear as a party.

The panel decision also directly conflicts with this Court's decision in *San Juan County v. United States*, 503 F.3d 1163 (10th Cir. 2007) (en banc), and the Court's earlier *Kane County v. United States*, 597 F.3d 1129 (10th Cir. 2010), decision issued in this case. Both of these decisions denied SUWA's intervention in an R.S. 2477 right-of-way title suit, which simply adjudicates title to the length and breadth of a right-of-way, because the United States can adequately defend the single issue of its title. While *San Juan County* involved two causes of action, and this lawsuit solely involves a title claim, both *San Juan County* and *Kane County* denied SUWA's intervention in a federal title suit where SUWA claims no title.

Additionally, this petition presents a question of exceptional importance in that it is time for this Court to revisit *San Juan County* and confirm the proper standards for intervention. Divided panels of this Court recently confirmed that *San Juan County* is partially abrogated. *See Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 913 (10th Cir. 2017) (with concurring opinion, Hartz, J., at 914); *Western Energy Alliance v. Zinke*, 877 F.3d 1157, 1165 (10th Cir. 2017) (with dissenting opinion, Hartz, J., at 1170). And yet *San Juan County* continues to be cited for and against intervention in circumstances that are impossible to reconcile, including in the instant panel decision where the majority repeatedly cites a four-

judge concurrence-dissent as supporting intervention.  Slip Op. at 26-27.  *San Juan County* denied SUWA's intervention and a six-judge concurrence stated that SUWA did not have an interest for purposes of intervention in an R.S. 2477 title suit.  *San Juan County*, 503 F.3d at 1207.  In light of the Supreme Court's recent decisions, en banc rehearing will afford the Court an opportunity to establish the proper legal standards going forward.

Rehearing should also be granted to correct the majority's factual errors—errors without which intervention would not have been granted.  The single issue before the district court is confirming the established width of three rights-of-way.  *Kane County v. United States*, 772 F.3d 1205, 1223 (10th Cir. 2014).  That is all.  The district court will not authorize Kane County and the State to improve, realign, or widen the roads.  Thus, SUWA has no "imminent injury" because Kane County and the State do not "seek to double" or "more than double" (Slip Op. 13) the width of any road, nor is the point of the suit "to increase traffic on the roads."  *Id*. at 14.  The district court will not increase or limit "the number of vehicles on the roads."  Slip Op. at 25.  Correcting these factual errors will inevitably lead to reversal, as SUWA can show no injury in fact for purposes of standing.

**BACKGROUND**

**A.      Title To Utah's R.S. 2477 Highway Rights-of-Way Is Owned By
           The State and County.**

From 1866 to 1976, R.S. 2477 granted a "right-of-way for the construction

of highways across public lands, not otherwise reserved for public purposes." *S.*

*Utah Wilderness All. v. Bureau of Land Management*, 425 F.3d 735, 740 (10th Cir.

2005) (quoting Mining Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253 (1866),

repealed by Federal Land Policy Management Act of 1976, Pub. L. No. 94-579, §

706(a), 90 Stat. 2743).  As a free-standing grant of rights-of-way that operated for

110 years, "most of the transportation routes of the West were established under its

authority." *Id*.

R.S. 2477 was repealed in 1976 by the Federal Land Policy Management

Act of 1976 ("FLPMA"), Pub. L. No. 94-579, § 706(a), 90 Stat. 2743, but all

established rights-of-way were grandfathered as valid existing rights.  *S. Utah*

*Wilderness All.*, 425 F.3d at 741.  FLPMA confirms that the public lands are

"subject to valid existing rights."  43 U.S.C. § 1701 note.  Any interest SUWA

may have in wilderness or wilderness study areas is subject to these valid existing

rights.  *Kane County*, 772 F.3d at 1217.

Under Utah law, Kane County and the State are joint owners of public

highway rights-of-way.  Utah Code Ann. § 72-3-103(3) (Class B roads); Utah

Code Ann. § 72-3-105(3) (Class D roads).  SUWA and all other "[m]embers of the

public . . . do not have a 'title' in public roads." *Kinscherff v. United States*, 586 F. 2d 159, 160 (10th Cir. 1978); *Sw. Four Wheel Drive Ass'n. v. Bureau of Land Management*, 363 F.3d 1069, 1071 (10th Cir. 2004) (same).

### B. The Quiet Title Act Is A Narrow Waiver Of The United States' Sovereign Immunity For The Single Purpose Of Adjudicating Title.

The Quiet Title Act ("QTA") provides that the "United States may be named as a party defendant in a civil action . . . to adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a). The QTA's limited waiver of sovereign immunity is "strictly" construed. *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). Under the QTA a district court does not grant title, rather it allows "claimants to confirm their existing title interests on lands owned by the United States." *Kane County (1) v. United States*, No. 2:08-CV-0315, 2013 WL 1180764, at *1 (D. Utah Mar. 20, 2013), rev'd and remanded sub nom. *Kane County, Utah v. United States*, 772 F.3d 1205 (10th Cir. 2014). Moreover, the district court's limited jurisdiction under the QTA does not allow it to address public land or highway management, it solely authorizes the district court to adjudicate title, being the "existence or non-existence of a right-of-way and its length and its breadth." *San Juan County*, 503 F.3d at 1171. Adjudicating an existing title is the only issue that has ever been before the district court in this case.

Following a two-week trial, Kane County and the State confirmed their pre-1976 title to twelve of fifteen R.S. 2477 rights-of-way in the suit. *See Kane County (1)*, No. 2:08-CV-315, 2013 WL 1180764 (D. Utah Mar. 20, 2013). On appeal, this Court reversed, *inter alia*, the district court's decisions as to the width of the Skutumpah, Swallow Park and North Swag roads. *Kane County*, 772 F.3d at 1224. Now, on remand, all that is left is "setting the widths of the rights-of-way" for these three roads. *Id*.

## I. The Majority Erred In Finding That SUWA, With No Title To Claim Or Defend, Has Standing To Litigate A Title Suit.

SUWA lacks standing because it has no legal interest in title, and title is the only issue before the district court. The Skutumpah, Swallow Park and North Swag roads exist on the ground and people have traveled these roads for more than 70 years. Kane County's and the State's title has been confirmed and all that remains in the case is "the widths of the rights-of-way." *Kane County*, 772 F.3d at 1225. The district court will not authorize improvements, realignments or changes to the roads, nor will it do anything to increase traffic. Slip Op. 13-14. The "injury" upon which the majority found standing does not exist.

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc.*, 136 S. Ct. at 1547. "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id*. Standing's "irreducible constitutional minimum"

6

requires a party to show that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citations omitted). In turn, an injury in fact requires proof of an "invasion of a legally protected interest" that is concrete and particularized. *Id*. at 1548 (citations omitted).

An intervenor, like anyone attempting to litigate in federal court, must have its own "Article III standing." Dissent, at 1 (citing, *inter alia*, *Town of Chester*, 137 S. Ct. at 1651; *Hollingsworth*, 570 U.S. at 704). "The Article III requirement that a party invoking the jurisdiction of a federal court seek relief for a personal, particularized injury serves vital interests going to the role of the Judiciary in our system of separated powers." *Hollingsworth*, 570 U.S. at 696.

Here, SUWA lacks standing because it lacks an interest in the lawsuit and will not suffer an injury to a legally protected interest. Title to the three roads has already been quieted in Kane County and the State, and all that is left is to confirm the width of the existing rights-of-way. No dirt will be moved, no change will be made, and SUWA cannot claim any injury by the roads' continued existence. SUWA has no legally protected interest in title to the rights-of-way or the land, and contrary to the majority opinion, SUWA's "environmental concern" is non-justiciable and not before the district court. A federal court is empowered to consider "'cases and controversies of the sort traditionally amenable to, and

resolved by, the judicial process.'" *Spokeo, Inc.*, 136 S. Ct. at 1550 (Thomas, J., concurring). But "'an Article III case or controversy joined by an intervenor who lacks standing ceases to be an Article III case or controversy.'" Dissenting Opinion ("Dissent") at 2 (citation omitted).

SUWA cannot point to an injury that is "both concrete and particularized." *Spokeo*, at 1548. The "path leading to SUWA's asserted injury is too attenuated to establish Article III standing." Dissent, at 7. Moreover, SUWA's "indisputable" (Slip Op. at 13) environmental concern cannot be of more legal weight or differentiated from everyone's interest in the environment. Notably, the environment is not justiciable in this title suit. Additionally, there are countless individuals and interest groups who also claim spiritual, aesthetic, health and recreational interests in the public lands. As noted in *San Juan County*, these groups were "waiting in the wings to intervene on the same legal theory that supports SUWA's intervention. *Id*. at 1210 (McConnell, J., concurring). There are motorized recreation groups that may want to protect their interests in driving the roads. There are mountain bikers who do not want to share the roads with motorized vehicles, but also do not support SUWA because bicycles are not allowed in wilderness. There are hunters and ranchers with their own interests in the roads. These groups have their own "indisputable" interests, raising the question of how many non-title claimants can there be in a title suit?

SUWA also lacks standing "under the third-party standing doctrine."

Dissent, at 8. "The general prohibition against third-party standing applies . . .

where [SUWA] seeks to vindicate the property rights of the federal government."

*The Wilderness Soc'y v. Kane County*, 632 F.3d 1162, 1165 (10th Cir. 2011) (en

banc). Simply stated, SUWA "lacks prudential standing to sue." *Id*.

## II. The Majority's Decision Conflicts With This Court's Decisions In *San Juan County* And *Kane County*.

From 2005 to June 25, 2019, this Court denied SUWA's attempts to

intervene in federal R.S. 2477 quiet title suits three times, including twice in this

lawsuit alone. First, in 2007 this Court sitting en banc reversed a panel that had

granted SUWA intervention for the reasons stated in *San Juan County. v. United*

*States*, 503 F.3d 1163 (10th Cir. 2007). Second, in 2010 this Court upheld the

district court's denial of SUWA's pre-trial attempt to intervene in this case for the

reasons stated in *Kane County v. United States*, 597 F.3d 1129 (10th Cir. 2010).

Third, in 2013 this Court denied SUWA's post-trial attempt to intervene in this

case on appeal. *See* Appeal No. 13-4108, Order dated September 2, 2014, at 2.

The majority's decision conflicts with this Court's decisions in *San Juan County*

and *Kane County*.

In light of the confusing precedent and the Supreme Court's recent

decisions, Kane County and the State respectfully state that it is time for the full

Court to revisit *San Juan County* and provide clear guidance for the courts and

parties in this circuit. Over the last 12 years different panels of this Court have struggled to explain and apply *San Juan County* due to the plurality, concurring and dissenting opinions. *See, e.g., WildEarth Guardians v. U.S. Forest Serv*., 573 F.3d 992, 997 (10th Cir. 2009) (noting that only three members of the en banc court joined portion of the opinion); *Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n*, 787 F.3d 1068, 1072 n.1 (10th Cir. 2015) (explaining different opinions).

The facts and claims in *San Juan County* were unique, more favorable to SUWA's intervention, but this Court still denied intervention. In 2004 San Juan County, Utah, sued the United States of America, the Department of the Interior, and the National Park Service ("Park Service") on two causes of action: 1) a QTA claim seeking title to a road in a national park, and 2) a claim for declaratory relief to force the Park Service to remove a newly-placed gate blocking vehicles from any travel on the road. SUWA moved to intervene, but Utah district court Judge Jenkins denied intervention on grounds that the title dispute would determine the length and breadth of the road and SUWA did not claim title. SUWA appealed.

A divided panel of this Court reversed in 2005. *San Juan County v. United States*, 420 F.3d 1197 (10th Cir. 2005). Citing a string of APA intervention decisions, Judge Ebel, for the majority, found that SUWA had an interest in that lawsuit (*id*. at 1211), and the United States would not adequately represent that

interest.  *Id*. at 1213.  Judge Porfilio dissented on grounds that SUWA lacked an

interest.  *Id*. at 1214.

In 2007, this Court sitting en banc reversed the panel and held that SUWA

could not intervene as of right for the varied reasons stated in *San Juan County v.*

*United States*, 503 F.3d 1163 (10th Cir. 2007) (en banc).  Perhaps the clearest

holding of *San Juan County* was that a party seeking to intervene "need not

establish Article III standing 'so long as another party with constitutional standing

on the same side as the intervenor remains in the case.'"  *Id*. at 1172.  As discussed

above, that holding has been abrogated.

Next, at least a plurality of the Court dismissed the long-standing "direct,

substantial and legally protectable interest" (*id*. at 1192) or "DSL test" as being of

"questionable pedigree."  *Id*. at 1193.  "[C]ourts that pay lip service to the DSL test

regularly manage to manipulate (ignore?) the language to reach the result required

by practical considerations."  *Id*.  However, having questioned the validity of the

DSL test, the plurality noted its utility.  "This is not to say that it is error for a court

addressing an application for intervention to consider whether the prospective

intervenor's interest is direct, substantial, and legally protectable."  *Id.* at 1194.

"As we previously stated, an interest that clearly satisfies all these conditions

would likely justify intervention."  *Id*.  A six-judge concurring opinion noted the

problems likely to arise from discrediting a long-running legal standard.  "Given

that the court offers no defined alternative to our traditional standard, I hope lower courts will continue to employ it. The court's opinion leaves open this possibility." *Id*. at 1209, n.5 (Kelly, J., concurring).

Granting en banc review will afford the Court an opportunity to clarify and define the proper standard for considering motions to intervene, especially in a traditional lawsuit like this quiet title suit. Kane County and the State suggest that the standing principles announced in *Spokeo*, coupled with the standing to intervene requirements stated in *Town of Chester* and *Hollingsworth*, indicate that the DSL test should be confirmed as the proper test. These Supreme Court decisions can also be seen as discrediting the "practical effect" analysis stated in *San Juan County*. "Our 'direct, substantial, and legally protectable' test is also more consonant with the 'significant protectable interest' requirement articulated in *Donaldson v. United States*, 400 U.S. 517, 542 (1971)." *San Juan County*, at 1209, n.5 (Kelly, J., concurring).

As it stands, *San Juan County* has been cited for and against intervention in ways that are hard to reconcile, including being cited in support of SUWA's intervention in this case. *See* Slip Op. at 28. In *Statewide Masonry v. Anderson*, 511 F. App'x 801 (10th Cir. 2013), the Court wrote that "the fact that you might anticipate a benefit from a judgment in favor of one of the parties to a lawsuit . . . does not entitle you to intervene in their suit." *Id*. at 805 (citations omitted). Thus,

even if a party had "a qualifying interest in the litigation, it is not entitled to intervene 'if existing parties adequately represent that interest.'" *Id*. at 806 (quoting Fed. R. Civ. P. 24(a)(2)). Citing *San Juan County*, the Court held that it presumes "that representation is adequate when the objective of the applicant for intervention is identical to one of the parties." *Id*. (citation omitted); *Pub. Serv. Co. of New Mexico v. Barboan*, 857 F.3d 1101, 1114 (10th Cir. 2017) (same). Here, however, the majority reached a different result even though it acknowledged that the United States has the same objective as SUWA. Slip Op. 27.

Additionally, the majority's statement that intervention analysis is relaxed in cases of public interest (Slip Op. 30) cannot be reconciled with this Court's decision in *Tri-State Generation*, 787 F.3d 1068 (10th Cir. 2015). There, Tri-State provided electricity to forty-four member systems in several states. *Id*. at 1069. Providing electricity across several states would certainly involve the public interest. However, the court denied intervention because "even though a party seeking intervention may have different 'ultimate motivation[s]' from the governmental agency, where its objectives are the same, we presume representation is adequate. *Id*. at 1072–73.

Granting review will further give the full Court the opportunity to explain how, in a title suit, a change in administration factors into the intervention analysis.

13

"In some cases—such as an APA suit against federal land-management policy, in which the government has multiple objectives and must balance a variety of public and private interests—a change of presidential administration can constitute a change in circumstance justifying reconsideration of adequate representation." Dissent, at 20 (citation omitted). "Indeed, all the cases the majority cites are APA challenges of this sort. But a change in presidential administration is not the sort of relevant change that affects adjudication of title in a Quiet Title Act action." *Id.*

    If, following SUWA's intervention, there is a change in administration in 2020, will Kane County and the State be able to move to have SUWA dismissed? The "political and legal landscape" changes all the time, but that should not be part of intervention analysis—especially in a traditional lawsuit like a QTA suit. Slip Op. at 16.

## CONCLUSION

For the reasons set forth above, Kane County and the State respectfully request the Court grant panel rehearing or rehearing en banc.

RESPECTFULLY SUBMITTED this 18th day of September, 2019.

HOLLAND & HART LLP

*/s/ Shawn Welch*
Shawn T. Welch
Richard D. Flint
Chelsea J. Davis
*Attorneys for Plaintiff-Appellee Kane County, Utah*

STATE OF UTAH

_/s/ Anthony L. Rampton*_
Anthony L. Rampton
Kathy A.F. Davis
David Halverson
_Attorneys for Plaintiff-Appellee State of Utah_
_* Signed with permission given._

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 3,431 words.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 MSO in 14-point Times New Roman.

DATED this 18th day of September, 2019.

HOLLAND & HART LLP

*/s/ Shawn Welch*
Shawn T. Welch
Richard D. Flint
Chelsea J. Davis
*Attorneys for Plaintiff-Appellee Kane*
*County, Utah*

**CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

(1)     all required privacy redactions have been made per 10th Cir. R. 25.5;

(2)     the ECF submission is an exact copy of these documents;

(3)     the digital submissions have been scanned for viruses with Defender Security Center updated on September 17, 2019, and this submission is free of viruses.

DATED this 18th day of September, 2019.

HOLLAND & HART LLP

*/s/ Shawn Welch*
Shawn T. Welch
Richard D. Flint
Chelsea J. Davis
*Attorneys for Plaintiff-Appellee Kane*
*County, Utah*

# CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of September, 2019, I electronically filed the foregoing Petition for Panel Rehearing and Request for En Banc Rehearing with the Clerk of the Court using the CM/ECF system, which will provide notice of the same to counsel of record. Six hard copies of the aforementioned brief will be mailed to the Clerk of the Court for delivery within two business days.

HOLLAND & HART LLP

*/s/ Shawn Welch*
Shawn T. Welch
Richard D. Flint
Chelsea J. Davis
*Attorneys for Plaintiff-Appellee Kane County, Utah*

13220828_v1

**ADDENDUM - OPINION**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 25, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KANE COUNTY, UTAH,

      Plaintiff - Appellee,

and

THE STATE OF UTAH,

      Intervenor Plaintiff - Appellee,

v.

UNITED STATES OF AMERICA,

      Defendant - Appellee.

------------------------------

SOUTHERN UTAH WILDERNESS
ALLIANCE; THE WILDERNESS
SOCIETY,

      Movants - Appellants.

No. 18-4122

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:08-CV-00315-CW)**
_____

Chad R. Derum, Manning Curtis Bradshaw & Bednar PLLC (Jess M. Krannich and
Trevor J. Lee, Manning Curtis Bradshaw & Bednar PLLC, and Stephen H.M. Bloch,
Southern Utah Wilderness Alliance, with him on the briefs), Salt Lake City, Utah, for
Movants-Appellants.

James A. Maysonett, United States Department of Justice, Environment & Natural

Resources Division (Jeffrey Bossert Clark, Assistant Attorney General, and Eric Grant, Deputy Assistant Attorney General, with him of the brief), Washington, D.C., for Defendant-Appellee United States of America.

Shawn T. Welch, Holland & Hart LLP (Richard D. Flint and Chelsea J. Davis, Holland & Hart LLP, with him on the brief), Salt Lake City, Utah, for Plaintiff-Appellee Kane County, Utah.

Sean D. Reyes, Utah Attorney General, Anthony L. Rampton, Kathy A.F. Davis, and David Halverson, Assistant Attorneys, Utah Attorney General's Office, Salt Lake City, Utah, on the brief for the Intervenor Plaintiff-Appellee The State of Utah.

_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **PHILLIPS**, Circuit Judges.

_____

**PHILLIPS**, Circuit Judge.

_____

This case comes to us for a third time. This time, we review SUWA's challenge to the district court's denial of its second motion to intervene. SUWA filed this second motion after we reversed the district court's determinations on the width of rights-of-way on three roadways. Responding to the issues now raised, we conclude that SUWA has standing to intervene as a party defendant; that we review SUWA's second motion to intervene de novo and not for an abuse of discretion; and that SUWA has met all requirements to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we reverse the district court's denial of SUWA's second motion to intervene.

## BACKGROUND

In 2008, Kane County sued the United States under the Quiet Title Act, 28 U.S.C. § 2409a, which provides "the exclusive means by which adverse claimants c[an]

challenge the United States' title to real property." *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983). Kane County alleged that it held title to fifteen rights-of-way under Section 8 of the Mining Act of 1866, more commonly known as "Revised Statute (R.S.) 2477." In enacting R.S. 2477, Congress codified "a standing offer of a free right of way over the public domain," allowing the construction of highways over public lands not already "reserved for public uses." *Lindsay Land & Live Stock Co. v. Churnos*, 285 P. 646, 648 (Utah 1929) (internal quotations omitted). In 1976, Congress enacted the Federal Land Policy and Management Act, which repealed R.S. 2477, but preserved already-existing rights-of-way. 43 U.S.C. § 1769(a).

Seven months after Kane County filed its complaint, SUWA[1] moved to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure. Both Kane County and the United States opposed the motion. After a hearing, the district court denied SUWA's motion, concluding that SUWA had no legal interest in the asserted rights-of-way, because "the only issue in this case is whether Kane County can establish that it holds title to the roads at issue" and SUWA "does not claim title to th[ese] roads." *Kane Cty., Utah v. United States*, No. 2:08-CV-315, 2009 WL 959804, at *2 (D. Utah Apr. 6, 2009). The court further concluded that even if SUWA did have an interest, it had failed to show that the United States would not adequately represent that interest or that it

---

[1] SUWA is a member-based nonprofit dedicated to preserving the wilderness of the Colorado Plateau. The Wilderness Society and the Sierra Club both joined SUWA's motion to intervene.

possessed "any special expertise, experience, or knowledge with respect to the historic use of the roads that would not be available to the United States." *Id.* at *2–3.

In 2009, SUWA appealed, and in March 2010 we affirmed, concluding that "even assuming SUWA has an interest in the quiet title proceedings at issue, SUWA has failed to establish that the United States may not adequately represent SUWA's interest." *Kane Cty., Utah v. United States*, 597 F.3d 1129, 1133 (10th Cir. 2010) ("*Kane County I*"). Specifically, we rejected SUWA's argument that it had shown the United States would not adequately represent SUWA's interest in litigating title, despite SUWA's reliance on its history of adversarial relations with the Bureau of Land Management (BLM) and on the BLM's alleged unwillingness to defend federal control. *Id.* at 1134–35.

We raised the possibility of looking beyond the binary title determination to address the "potential scope of Kane County's purported rights-of-way." *Id.* at 1135. But we ultimately declined to do so after noting that SUWA had not argued in the district court that scope was part of the title determination. *Id.* Further, we noted that SUWA hadn't even raised the issue on appeal until questioned about it during oral argument. *Id*. Accordingly, we deemed the scope argument waived "for purposes of this appeal." *Id.* We affirmed on grounds that SUWA had "failed to establish, at this stage of the litigation, that the federal government will not adequately protect its interest." *Id.*

In March 2010, soon after we decided *Kane County I*, the district court granted the State of Utah's motion to intervene as of right as a plaintiff. Then, in August 2011, after having "traveled all of the roads at issue with counsel and representatives of the parties during a two-day site visit," the district court held a bench trial on the disputed rights-of-

4

way. *See Kane Cty., Utah (1) v. United States*, No. 2:08-CV-00315, 2013 WL 1180764, at *1 (D. Utah Mar. 20, 2013). At trial, the court heard from twenty-six witnesses and received over one hundred and sixty exhibits. *Kane Cty., Utah v. United States*, 772 F.3d 1205 (10th Cir. 2014). After post-trial briefing, in which SUWA participated as an amicus curiae,[2] the district court issued memorandum decisions concluding that (1) it had subject-matter jurisdiction under the Quiet Title Act over all the disputed roads, and that (2) Kane County and the State of Utah had proved R.S. 2477 rights-of-way on twelve of the fifteen roads or road segments. *Id.* The court also decided the scope—i.e., the reasonable and necessary width based on the pre-1976 use—of the proved rights-of-way. *Id.*

In 2013, the United States and the plaintiffs each filed separate appeals. We summarily denied SUWA's motion to intervene in the cross-appeals. In 2014, we affirmed in part and reversed in part. *Kane Cty.*, 772 F.3d at 1209–25 ("*Kane County II*"). Relevant here, we reversed the district court's scope determination for three of the rights-of-way—Swallow Park Road, North Swag Road, and Skutumpah Road—as well as its

---

[2] The district court allowed SUWA to participate as amicus in a limited capacity. The court denied SUWA's request to address the court during trial, but did accept three of its post-trial briefs (though it limited SUWA to those briefs). And in one of its post-trial memorandum decisions, the district court considered SUWA's jurisdictional arguments. *See Kane Cty., Utah v. United States*, 934 F. Supp. 2d 1344, 1347, 1360–64 (D. Utah 2013), *aff'd in part, rev'd in part and remanded*, 772 F.3d 1205 (10th Cir. 2014).

decision to allow "unspecified future improvements" on these three rights-of-way, *id.* at 1223–25.[3]

The "scope" of a right-of-way is a question of state law, and under Utah law a right-of-way may be expanded beyond the beaten path where "reasonable and necessary" to safely accommodate the pre-1976 use. *Sierra Club v. Hodel*, 848 F.2d 1068, 1080, 1083 (10th Cir. 1988), *overruled on other grounds by Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992). In other words, an R.S. 2477 right-of-way in Utah may be widened "as necessary to meet the exigencies of increased travel, at least to the extent of a two-lane road." *Id.* at 1083. This analysis requires the district court to proceed in three steps. First, the court must make the binary determination of whether a right-of-way exists at all. *Id.* Second, the court must determine the pre-1976 uses of the right-of-way. *Id.* And third, the court must decide whether, based on the pre-1976 use, the right-of-way should be widened to meet the exigencies of increased travel. *Id.* To the extent that the right-of-way holder wishes to improve[4] the right-of-way beyond

---

[3] Though not at issue here, we also reversed the district court's finding of subject-matter jurisdiction to resolve title over six of the roads, *id.* at 1213–14; affirmed the district court's determination that the limitations period had not yet run on one of the roads, *id.* at 1216–19; and reversed the district court's determination that one of the roads was "reserved for public use" under R.S. 2477, *id.* at 1222.

[4] We have distinguished between "routine maintenance, which does not require consultation with the BLM," and "construction of improvements, which does." *S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 748–49 (10th Cir. 2005), *as amended on denial of reh'g* (Jan. 6, 2006). "Construction of improvements" includes "the widening of the road, the horizontal or vertical realignment of the road, the installation (as distinguished from cleaning, repair, or replacement in kind) of bridges, culverts and other drainage structures, as well as any significant change in the surface composition of the road (*e.g.,* going from dirt to gravel, from gravel to

6

what is reasonable and necessary, however, it must first consult with the BLM. *Id.* at 1084–85.

In its memorandum decision, the district court had concluded that Kane County and the State of Utah had proved 24-foot rights-of-way on Swallow Park and North Swag roads (five-mile stretches of dirt road with a current travel surface of between 10 and 12 feet), and a 66-foot right-of-way on Skutumpah Road (a "major two-lane thoroughfare" stretching thirty three miles with a current travel surface of between 24 and 28 feet). *Kane Cty. II*, 772 F.3d at 1223; *Kane Cty.*, 2013 WL 1180764, at *9. But because the district court had failed to consider the pre-1976 uses of these roads, we remanded for it to redetermine the width of the roadways. *Kane Cty. II*, 772 F.3d at 1223. Specifically, we recognized that while a "road can be 'widened [beyond its pre-1976 boundaries] to meet the exigencies of increased travel,' including where necessary to ensure safety," the reasonableness and necessity of any expansion beyond the pre-1976 right-of-way must be

---

chipseal, from chipseal to asphalt, etc.), or any improvement, betterment, or any other change in the nature of the road that may significantly impact Park lands, resources, or values. *Id.* (internal quotations omitted). In contrast, "routine maintenance" "preserves the existing road, including the physical upkeep or repair of wear or damage whether from natural or other causes, maintaining the shape of the road, grading it, making sure that the shape of the road permits drainage, and keeping drainage features open and operable—essentially preserving the status quo." *Id.* (alterations omitted). "Under this definition, grading or blading a road for the first time would constitute 'construction' and would require advance consultation, though grading or blading a road to preserve the character of the road in accordance with prior practice would not." *Id.*

read "'*in the light of traditional uses to which the right-of-way was put.*'" *Id.* (emphasis

in original) (quoting *Hodel,* 848 F.2d at 1083).[5]

After remand, the case slowed until September 2017, when the district court

entered an order directing the parties to file briefs on the effect of our ruling. Ten days

later, the parties jointly moved for a four-month stay, stating that they had begun

settlement discussions and were "optimistic" that they could "reach agreement regarding

the effect of [our] decision" and resolve the remaining issues. Appellant's App. at 38,

110–11. Three days later, the district court granted the motion.[6] About two months after

that, SUWA sent a letter to the parties requesting "reasonable advance notice" of any

settlement discussions and "an opportunity to attend and participate in such discussions,"

but received no response. *Id.* at 125, 262–63. About three months after the joint motion

was filed, the President of the United States considerably reduced the size of the Grand-

Staircase-Escalante National Monument from about 1,700,000 acres to about 838,000

acres.[7] Relevant here, SUWA represented at oral argument that Swallow Park Road and

---

[5] Kane County and the State of Utah each unsuccessfully petitioned the United States Supreme Court for a writ of certiorari. *Kane Cty., Utah v. United States*, 136 S. Ct. 318 (2015); *Kane Cty., Utah v. United States*, 136 S. Ct. 319 (2015).

[6] On January 2, 2018, the parties jointly requested and were granted an additional stay of 31 days. The day the second stay expired, Kane County filed a "Supplemental Brief and Request for Further Findings of Fact and Conclusions of Law," asking the court to conduct an additional site inspection. The United States responded, agreeing that further factfinding was necessary, but asserting that the existing record could be supplemented by lay and expert testimony without a second site visit.

[7] *See* Presidential Proclamation Modifying the Grand Staircase-Escalante National Monument, 2017 WL 5988612, https://www.whitehouse.gov/presidential-

North Swag Road both lie within the de-established portions of the monument, though the United States asserted that only Swallow Park Road does. About three weeks later, SUWA filed a second motion to intervene,[8] which Kane County, the State of Utah, and the United States all opposed.

Though SUWA styled its 2017 motion as a "Motion to Intervene," the district court treated it as a motion to reconsider its denial of SUWA's 2009 motion to intervene. In deciding the motion, the district court assumed for purposes of argument that the motion was timely, but still denied it on grounds that SUWA had presented nothing to undermine the court's earlier determination that the United States was adequately representing SUWA's interest. In doing so, the district court relied on three bases.

First, rejecting SUWA's argument to the contrary, the district court ruled that determining title necessarily includes determining the scope of the rights-of-way. The district court reasoned that "scope is inherent in the quiet title process because as a practical matter the court cannot quiet title to an undefined property." *Kane Cty., Utah v. United States*, No. 2:08-CV-315, 2018 WL 3999575, at *3 (D. Utah Aug. 21, 2018). Second, the court rejected SUWA's argument that the United States was necessarily

───────────────

actions/presidential-proclamation-modifying-grand-staircase-escalante-national-monument/. This proclamation, along with a proclamation reducing Bears Ears National Monument from around 1,350,000 acres to about 200,000 acres, were the first diminishments of a national monument in over half a century, and by far the largest in U.S history. *See* National Park Service, *Monuments List*, https://www.nps.gov/archeology/sites/antiquities/monumentslist.htm (last visited June 6, 2019).

[8] The Wilderness Society joined the second intervention motion, but the Sierra Club did not.

representing competing interests, reasoning that unlike cases involving environmental regulations or resource management, the United States' sole interest here lay in seeking the narrowest width of the roadways. *Id*. Third, the court ruled that the "mere possibility of settlement" did not mean that "the United States would advocate for anything other than retention of the maximum amount of property." *Id*. SUWA timely appealed.

## DISCUSSION

SUWA argues that the district court erred by denying its second motion to intervene. Kane County, the State of Utah, and the United States ("the Appellees") have each filed response briefs in support of the district court's order. Before considering the merits of their arguments, we must consider Kane County's argument that SUWA lacks Article III standing.[9]

### I.     Standing

To seek relief in federal court, a party must show constitutional standing. *Bennett v. Spear*, 520 U.S. 154, 162 (1997). To make this showing, a party must "demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the [challenged conduct], and that the injury will likely be redressed by a favorable decision." *Id.* (internal quotations omitted).

In *San Juan Cty., Utah v. United States*, another R.S. 2477 case involving SUWA, a majority[10] of our en banc court held that "parties seeking to intervene under Rule 24(a)

---

[9] The Appellees make no prudential-standing arguments.

[10] Unless we indicate otherwise, every citation to *San Juan County* refers to a portion of Judge Hartz's lead opinion that received seven votes.

or (b) need not establish Article III standing 'so long as another party with constitutional standing on the same side as the intervenor remains in the case.'" 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc) (internal quotations omitted).

But ten years later, the Supreme Court modified our "piggyback standing" rule, holding that an intervenor as of right must "meet the requirements of Article III if the intervenor wishes to pursue relief not requested" by an existing party. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1648 (2017). In that case, the record was ambiguous whether the intervening plaintiff was seeking a different form of relief from the existing plaintiff: a separate award of money damages against the same defendant in its own name. *Id.* at 1651–52. Because "[a]t least one [litigant] must have standing to seek each form of relief requested," the Court remanded for the circuit court to determine whether the intervenor, in fact, sought "additional relief beyond" what the plaintiff requested. *Id.* at 1651.[11]

---

[11] The dissent cites *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 913 (10th Cir. 2017), for the proposition that "any party" seeking to intervene must demonstrate its own independent Article III standing. Dissenting Op. at 4–5. But language to that effect in *Safe Streets* is dicta. *Safe Streets* involved two States (Nebraska and Oklahoma) seeking to intervene as plaintiffs in an action against another State, Colorado. There, we held that we were without *subject matter* jurisdiction to consider the State's intervention motion, because 28 U.S.C. § 1251(a) gave exclusive subject-matter jurisdiction to the United States Supreme Court to resolve disputes between two states. *Id.* at 877, 912. Furthermore, *Safe Streets* relied on *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013), for this dicta about constitutional standing, but *Hollingsworth*, in fact, applied the piggyback standing rule. There, the intervenors had to demonstrate their own standing because they were the *sole parties* to seek an appeal. *Id.* at 702, 708. Here, the United States remains a party. The dissent also cites *United States v. Colorado & Eastern Railroad Company*, 882 F.3d 1264 (10th Cir. 2018). But again, that case is inapposite because there the would-be intervenor seeking to enforce a consent decree that it was not a party to

Citing *Town of Chester*,[12] Kane County argues that SUWA cannot simply invoke the United States' Article III standing, contending that SUWA and the United States are pursuing different relief. We disagree with that view. After all, the United States has informed us that it seeks "retention of the maximum amount of property" and will argue for "the smallest widths [it] can based on the historical evidence," the same relief that SUWA seeks.[13] *See* United States' Resp. Br. at 22, 32; Oral Arg., at 18:30.

---

"could not 'piggyback' on the standing of one of the described parties to the Consent Decree because there was no current case or controversy pending before the court on the part of those parties." *Id.* at 1268. In contrast, there exists a live controversy between the United States and the plaintiffs in this case.

[12] *Town of Chester* involved a plaintiff-side intervenor, but we see no reason not to apply that rule to defendant-side intervenors as well. *See Pennsylvania v. President United States of Am.*, 888 F.3d 52, 57 n.2 (3d Cir. 2018) (holding that a special-interest group seeking to intervene as a defendant to defend a challenged federal law did not need to demonstrate Article III standing, because the group was seeking "the same relief as the federal government," namely, the upholding of the law). In the action before us, the distinction between a plaintiff-side and defendant-side intervenor is unimportant, considering how easily a similar dispute could have been presented at the federal government's initiative as a plaintiff. *See e.g.*, *Kane Cty.*, 934 F. Supp. 2d at 1363 (noting that, before Kane County brought this quiet-title action, the BLM had sued Kane County for trespass regarding the same roads at issue here).

[13] Contrary to the dissent's view, *see* Dissenting Op. at 3–4, the interests of the United States and SUWA are not necessarily identical under Rule 24(a)(2) just because they pursue the same form of relief for piggyback standing under *Town of Chester*. *See e.g.*, *Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 845 (10th Cir. 1996) (concluding that interests were not identical even though both the government and the intervenor sought to uphold the Mexican Spotted Owl's protection); *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001) (concluding that interests were not identical even though the government and the intervenor both sought to uphold the proclamation creating a national monument). To hold otherwise would leave movants who pursued the same form of relief as the representative party *per se* adequately represented under Rule 24(a)(2) and thus denied intervention under *Town of Chester*. *See Pennsylvania v.*

Moreover, even if SUWA needed to establish its own independent standing, it has done so. Article III standing requires a litigant to show: (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

Here, as in *San Juan County*, it is "indisputable that SUWA's environmental concern is a legally protectable interest." *See* 503 F.3d at 1199. To prove an injury in fact, SUWA must establish an actual or imminent impairment of that interest. Imminence is "a somewhat elastic concept," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992), and "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotations omitted).

Under this standard, we conclude that SUWA has established an imminent injury. Kane County and the State of Utah seek to double the width of Swallow Park and North Swag roads, which are both dirt roads, and to more than double the width of Skutumpah Road. Wider roads will likely require realignments or improvements, such as grading or

---

*President United States of Am.*, 888 F.3d 52, 57 n.2, 60–62 (3d Cir. 2018) (finding inadequate representation where the intervenors pursued the same relief as the party with standing under *Town of Chester*); *Doe v. Zucker*, No. 117CV1005GTSCFH, 2019 WL 111020, at *10, *12 (N.D.N.Y. Jan. 4, 2019) (same) ("Even though Respondents and Intervener-Respondents seek the same ultimate relief [under *Town of Chester*], their interests remain different enough that Respondents might not adequately represent their unique interests.").

paving. *See generally*, *Hodel*, 848 F.2d at 1084–86; *Kane Cty.,* 2013 WL 1180764.

Such widening and improvement of the roads in a scenic area would almost inevitably

increase traffic, diminishing the enjoyment of the nearby natural wilderness. *See Hodel*,

848 F.2d at 1092 (noting that a project involving "realignments, widening, . . . [and] a

significant improvement in the quality of the road surface" would accommodate "large

increases in future traffic" on the road); *S. Utah Wilderness All.*, 425 F.3d at 748 (noting

that improvements may "change the character of the roadway").

Nor is such an injury speculative. An injury may be imminent even though

contingent upon an unfavorable outcome in litigation. *See Protocols, LLC v. Leavitt*, 549

F.3d 1294, 1299 (10th Cir. 2008) (concluding that "[t]he consequences of a contingent

liability . . . may well be actual or imminent" even though "by definition [such liability]

may not arise for a considerable time, if ever"). In *San Juan County*, we recognized that

"if the County prevails, it will then pursue opening the road to vehicular traffic that

SUWA has been trying to prevent." 503 F.3d at 1200. For that reason, we saw "nothing

speculative about the impact on SUWA's interests if the County prevails in its quiet-title

action," noting that "the whole point of" Kane County's suit was to increase traffic on the

roads.[14] *Id.* at 1201–02. We acknowledge that *San Juan County* involved the possibility

---

[14] Though this portion of the opinion concerned the potential impairment of
SUWA's interests under Rule 24(a)(2), other courts have recognized that "any person
who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v.
Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *see also Sokaogon
Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000) ("Any interest of such
magnitude as to support Rule 24(a) intervention of right is sufficient to satisfy the
Article III standing requirement as well.") (internal quotations and alterations
omitted).

of reopening closed roads, as opposed to widening already-opened roads, as here—but we view both as sufficient degrees of impact. A 24-foot road allows more traffic than a 10- or 12-foot road (in the case of North Swag and Swallow Park roads), and a 66-foot road allows more traffic than a 24- to 28-foot road (in the case of Skutumpah Road). And the more traffic, the more of an impact on the natural wilderness. Therefore, even assuming SUWA were required to establish its own Article III standing, we conclude that it has done so. *See Laidlaw*, 528 U.S. at 180–81.

## II.     Standard of Review

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, a nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties. *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017). We review a district court's timeliness ruling for an abuse of discretion, unless the district court makes no findings on timeliness; in that case, we review de novo. *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001). And, at least for initial motions to intervene, we review the district court's rulings on the other three prongs de novo. *Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996).

SUWA filed its second motion to intervene nine years after filing its first.[15] SUWA argues that the district court erred in treating its second motion as one for

---

[15] Kane County represents that this is SUWA's "fifth attempt" to intervene in this case. *See* Kane Cty.'s Resp. Br. at 1. To reach this figure, Kane County includes

reconsideration of its denial of the first motion to intervene. Instead, SUWA says, we should review de novo, because it did "not ask the Court to second guess its prior ruling or review previously existing but newly discovered facts," but rather to consider "a new political and legal landscape that did not exist when SUWA moved to intervene a decade ago." SUWA's Opening Br. at 12 n.47. In contrast, the Appellees argue that this court should treat SUWA's second motion as a mere request to reconsider the denial of its 2008 motion to intervene. From this, they argue that the proper standard of review is for an abuse of discretion. *See United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015) ("We review a district court's decision whether to reconsider a prior ruling for abuse of discretion.").

We agree with SUWA. Though our court has never determined what standard of review applies to a successive motion to intervene, we conclude that de novo review is more appropriate when, as here, a proposed intervenor shows that circumstances have changed between the two motions to intervene.

In *City of Colorado Springs v. Climax Molybdenum Co.*, a movant had filed three motions to intervene over a nearly-fifty-year span. 587 F.3d 1071, 1077 (10th Cir. 2009). Though we ultimately decided the case on standing grounds, we stated that "[i]f we reach

---

SUWA's appeal of the 2008 denial, SUWA's attempt to intervene in the *Kane County II* appeal, and SUWA's current appeal. We reject such a broad characterization.

the merits of Climax's appeal, our review of the district court's denial of the motion to intervene as of right will be *de novo*." *Id.* at 1078.[16]

In addition, other cases in our circuit point us to de novo review here. In *San Juan County*, seven judges acknowledged that case developments can alter the intervention calculus. In the lead opinion, Judge Hartz, joined by two other judges, stated that the "denial [of a motion to intervene] does not forever foreclose" intervention and that "the matter may be revisited" if "developments after the original application for intervention undermine" the basis for the initial denial. *San Juan Cty.*, 503 F.3d at 1207 (opinion of Hartz, J.). In addition, Judge Ebel, joined by three other judges, stated "I recognize, and appreciate the [lead opinion's] recognition that SUWA may renew its motion to intervene at a later date if it can demonstrate more clearly a conflict between its interests and the conduct of the United States in this or subsequent litigation." *Id.* at 1227 (Ebel, J., concurring in part, and dissenting in part). By emphasizing the possibility of changed circumstances, we view the seven judges as recognizing the importance of another round of review. We see no sense in blocking ourselves from the same de novo review we give

---

[16] We note that the dissent's cited cases on this point, *Abeyta v. City of Albuquerque*, 664 F.3d 792, 796 (10th Cir. 2011), and *Plain v. Murphy Family Farms*, 296 F.3d 975, 978 (10th Cir. 2002), contain stray comments characterizing a successive motion for intervention as a motion to reconsider. *See* Dissenting Op. at 12. But neither case involved an appeal of the denial of an intervention motion. Rather, both cases conclude that a nonparty cannot appeal an adverse judgment unless "the nonparty has a unique interest in the litigation and becomes involved in the resolution of that interest in a timely fashion both at the district court level and on appeal." *Abeyta*, 664 F.3d at 796 (citing *Plain*, 296 F.3d at 978).

the initial motion to intervene—when things have so changed.[17] Significantly, our statement in *Kane County I* also emphasizes a need to reevaluate intervention when circumstances change.[18] *See Kane Cty. I*, 597 F.3d at 1135 ("[SUWA] has failed to establish, *at this stage of the litigation*, that the federal government will not adequately protect its interest.") (emphasis added).

### III.    SUWA is entitled to intervene as of right.

As previously noted, to intervene as of right SUWA must establish that (1) the application is timely; (2) it claims an interest relating to the property or transaction which is the subject of the action; (3) the interest may as a practical matter be impaired or impeded; and (4) the interest may not be adequately represented by existing parties. *Zinke*, 877 F.3d at 1164. "This court has historically taken a liberal approach to intervention and thus favors the granting of motions to intervene." *Id.* (internal quotations omitted). In addition, "the requirements for intervention may be relaxed in cases raising significant public interests." *San Juan Cty.*, 503 F.3d at 1201 (citing *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 136 (1967)). We now consider each prong in turn.

---

[17] We discuss these developments later in Part III.C addressing adequate representation. In short, we consider a district court's moving from the binary title question to the more nuanced scope question as a qualifying development, as well as the change in presidential administration and its recent efforts to settle. *See Zinke*, 877 F.3d at 1169 ("[T]he change in the Administration raises the possibility of divergence of interest or a shift during litigation.") (internal quotations omitted).

[18] Indeed, during oral argument in *Kane County I*, the panel explored whether SUWA's interests might not arise until after title had been decided in favor of Kane County or the State of Utah.

**A. SUWA's motion is timely.**

Kane County argues that SUWA's motion is untimely. "The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" *Utah Ass'n of Ctys.*, 255 F.3d at 1250 (quoting *Sanguine, Ltd. v. U.S. Dep't of Interior,* 736 F.2d 1416, 1418 (10th Cir. 1984)). "[D]elay in itself does not make a request for intervention untimely." *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1235 (10th Cir. 2010). "The other factors in the test for untimeliness must also be considered." *Id.*

Reviewing de novo,[19] we conclude that SUWA's motion is timely. First, SUWA filed the motion three months after the parties' joint motion to stay. *See Zinke*, 877 F.3d at 1164–65 (holding that the motion was timely where the intervenors moved to intervene "just over two months after" learning of the lawsuit that could potentially affect their interests). Second, the only prejudice the Appellees allege is that "having to respond to excess briefs" will "needlessly delay the proceedings." Kane Cty. Resp. Br. at 9. Even assuming this could suffice to show prejudice, our court requires that "the prejudice to other parties . . . be prejudice caused by the movant's delay, not by the mere fact of intervention." *Tyson Foods*, 619 F.3d at 1236. Here, Kane County alleges prejudice just from the fact of intervention. *See id.* SUWA's participation will be limited to litigating the scope of three roads, and there has been no substantive briefing on this issue

---

[19] We review the timeliness prong de novo because the district court made no timeliness findings. *See Utah Ass'n of Ctys.*, 255 F.3d at 1249.

since the remand, so we fail to see how allowing SUWA to intervene at this stage would prejudice the Appellees. *See San Juan Cty.*, 503 F.3d at 1174 ("[T]he intervention of SUWA would not expose the United States to any burden not inherent in the litigation to which it has consented in the Quiet Title Act."). Therefore, because no "unusual circumstances" lead us to believe otherwise, we conclude that SUWA's motion is timely. *See Utah Ass'n of Ctys.*, 255 F.3d at 1250.

**B. SUWA possesses an interest that may be impaired by the litigation.**

To meet the interest requirement, an applicant "must have an interest that could be adversely affected by the litigation." *San Juan Cty.*, 503 F.3d at 1199. We apply "practical judgment" when "determining whether the strength of the interest and the potential risk of injury to that interest justify intervention."[20] *Id.* Establishing the potential impairment of such an interest "presents a minimal burden," *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010), and such an impairment may be "contingent upon the outcome of [] litigation," *San Juan Cty.*, 503 F.3d at 1203 (quoting *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995)). For example, we have concluded that a commercial wildlife photographer who had "photographed and studied the [Mexican Spotted] Owl in the wild" and had been instrumental in the decision to list the Owl under the Endangered Species Act possessed a legal interest in defending against a lawsuit to rescind that protection. *Coal. of Ariz./N.M. Ctys.*, 100 F.3d at 839–43.

---

[20] Though our court used to require an interest to be "direct, substantial, and legally protectable," we abandoned that test in *San Juan County*, finding it "problematic." 503 F.3d at 1192.

In *San Juan County*, we concluded that it was "indisputable that SUWA's environmental concern is a legally protectable interest." 503 F.3d at 1199. But in the present case, the district court declined to revisit its 2009 ruling that SUWA possesses no legal interest in the case. In that decision, the district court had reasoned that (1) "unlike the roads at issue in *San Juan County*, the roads at issue here have been open to the public for many years," and (2) "the only issue in this case is whether Kane County can establish that it holds title to the roads at issue." *Kane Cty.*, 2009 WL 959804, at *2. These rationales are not persuasive.

First, as mentioned previously, we view the difference in impacts between opening closed roads and widening already-opened roads as one of degree. Wider roads attract more traffic, which would impair SUWA's interest in preservation and enjoyment of the surrounding land. Second, a majority of our court recognized in *San Juan County* that although "SUWA d[id] not claim that it ha[d] title" to the disputed right-of-way, Rule 24(a)(2) "requires only that the applicant for intervention 'claim an interest *relating to* the property or transaction which is the subject of the action.'" 503 F.3d at 1200 (alteration omitted) (emphasis in original) (quoting Fed. R. Civ. P. 24(a)(2)). Given SUWA's decades-long history of advocating for the protection of these federal public lands, and the plaintiffs' stated objective of widening these roads, we conclude that SUWA has an interest that may be impaired by the litigation. *See id.* at 1201; *Coal. of Ariz./N.M. Ctys.*, 100 F.3d at 838–41; *Utah Ass'n of Ctys.*, 255 F.3d at 1252.

**C.  The United States may not adequately represent SUWA's interest.**

Next, SUWA must show that existing parties may not adequately represent its interest. This burden is "minimal," and "it is enough to show that the representation 'may be' inadequate." *Nat. Res. Def. Council v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978) (quoting *Trbovich v. United Mine Wkers.*, 404 U.S. 528, 538 n.10 (1972)). "Of course, representation is not inadequate simply because the applicant and the representative disagree regarding the facts or law of the case." *Sanguine*, 736 F.2d at 1419. "Nor is representation inadequate merely because the representative enters into a [settlement], because any case, even the most vigorously defended, may culminate in a [settlement]." *Id.* (internal quotations omitted).

When a would-be intervenor's and the representative party's interests are "identical," we presume adequate representation. *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir. 1986); *see also Pub. Serv. Co. of N.M. v. Barboan*, 857 F.3d 1101, 1113–14 (10th Cir. 2017) ("When the applicant and an existing party share an identical legal objective, we presume that the party's representation is adequate."). But where the purportedly adequate representative of the proposed intervenor's interest is a governmental entity, "this presumption [can be] rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest." *Utah Ass'n of Ctys.*, 255 F.3d at 1255.

Illustrative is *WildEarth Guardians v. United States Forest Service*, a case in which we allowed a coal company to intervene over an environmental group's opposition. 573 F.3d 992, 994–97 (10th Cir. 2009). The environmental group had argued

22

that the United States and the coal company both advocated for affirming an agency's decision to allow venting of methane gas from a mine. *Id.* at 994, 996. From this shared objective, the environmental group argued that the government adequately represented the company's interest. *Id.* We allowed intervention, noting that "the government has multiple objectives and could well decide to embrace some of the environmental goals" that the company opposed. *Id.* at 997. Also illustrative is *Utah Association of Counties*, where we allowed an environmental group to intervene as of right in a suit challenging the legality of the creation of the Grand Staircase-Escalante National Monument. 255 F.3d at 1255–56. There, the Utah Association of Counties opposed intervention, arguing that the government and the environmental group shared identical interests in sustaining the monument. *Id.* We rejected this argument, explaining that "[i]n litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." *Id.* at 1256. The reasoning of these cases supports SUWA's intervention in the present case.

Here, the parties agree that the only remaining issue in the district court is the scope of three roads. In deciding scope, the district court must determine whether it is reasonable and necessary to widen the roads to "meet the exigencies of increased travel . . . in the light of traditional uses to which the right-of-way was put." *Kane Cty. II*, 772 F.3d at 1223 (emphasis omitted) (quoting *Hodel*, 848 F.2d at 1083). SUWA wants the narrowest roads allowed. We must decide whether SUWA has met its minimal burden of establishing that the United States may not adequately represent this interest.

Relying on the above cases, SUWA first argues that its interests are not identical to those of the United States. In that circumstance, we do not apply a presumption of adequate representation. More specifically, SUWA points to the broader interests the United States must consider beyond seeking the narrowest scope of the rights-of-way.

In addition, as it did in the district court, SUWA argues that unlike a title determination, the scope issues in the district court are not a binary choice. Indeed, the title issues—Kane County's and the State of Utah's rights-of-way—are now established, and not contested on appeal. Instead, the intervenors seek to participate in the limited issue on which we remanded—the scope of the three remaining roads. In contrast, the Appellees contend that the United States' interests are identical to SUWA's, arguing that this is merely a "case about title," and that the United States' only interest is to advocate for the narrowest scope of the roads. United States' Resp. Br. at 13–14, 17–19, 21, 31, 38; State of Utah's Resp. Br. at 12–16. We agree with SUWA.

In *San Juan County*, four judges expressly viewed title and scope as separate determinations, observing that the question of title is a "binary" determination, while scope is much more "nuanced." 503 F.3d at 1228 (Ebel, J., concurring in part, and dissenting in part). We now adopt this reasoning. We read the lead opinion the same way, as it noted that the United States' single objective was to defend "exclusive title."[21] *See id.* at 1206 (Opinion of Hartz, J.); *see also id.* at 1228 (Ebel, J., concurring in part, and dissenting in part) (quoting lead opinion that "[s]hould it be determined that the State or

---

[21] Neither Judge Kelly's nor Judge McConnell's concurrence takes a position on the question of scope.

the County does hold a valid R.S. 2477 right of way, the closure of Salt Creek Road to vehicular traffic will be revisited *to insure that it is consistent with the rights associated with such a right-of-way*") (alterations omitted) (emphasis in original).

We agree with the district court that "scope is inherent in the quiet title process." *Kane Cty.*, 2018 WL 3999575, at *3. After all, a right-of-way must have a scope. But the district court must determine title and scope in separate steps. The district court itself recognized this in its 2011 summary-judgment order quieting title on many of the roads, while "reserv[ing] for trial the scope of the rights-of-way." *See Kane Cty.*, 2013 WL 1180764, at *3. Similarly, in *Kane County II*, we remanded for the district court to re-examine the scope of three rights-of-way, leaving its title determination on those rights-of-way undisturbed. *Kane Cty. II*, 772 F.3d at 1225. In other words, even upon deciding the R.S. 2477 title issue on the rights-of-way, the district court still needed to decide under Utah law whether Kane County and the State of Utah were entitled to widen the scope of the rights-of-way beyond the beaten path existing before October 21, 1976, when R.S. 2477 was repealed. *See Hodel,* 848 F.2d at 1083. As more fully explained below, though SUWA and the United States had identical interests in the title determination, they do not on scope.

For a proposed intervenor to establish inadequate representation by a representative party, "the possibility of divergence of interest need not be great," *Nat. Res. Def. Council*, 578 F.2d at 1346, and this showing "is easily made" when the representative party is the government, *Utah Ass'n of Ctys.*, 255 F.3d at 1254. SUWA's goal is to limit as much as possible the number of vehicles on the roads, but the United

States' objectives "involve a much broader range of interests, including competing

policy, economic, political, legal, and environmental factors."[22] *See San Juan Cty.*, 503

F.3d at 1229 (Ebel, J., concurring in part, and dissenting in part) (citing 16 U.S.C. §§ 1,

1a–1, 271d). The Appellees contend that this is merely a case about property rights. But

when that property is public land, public interests are involved. *See Block*, 461 U.S. at

284–85, 290 (noting that the Quiet Title Act "was necessary for protection of national

public interests"). And "the government's representation of the public interest generally

cannot be assumed to be identical to the individual parochial interest of a particular

member of the public merely because both entities occupy the same posture in the

litigation." *Utah Ass'n of Ctys.*, 255 F.3d at 1255–56. Indeed, "[w]e have repeatedly

pointed out that in such a situation the government's prospective task of protecting 'not

only the interest of the public but also the private interest of the petitioners in

intervention' is 'on its face impossible' and creates the kind of conflict that 'satisfies the

minimal burden of showing inadequacy of representation.'" *Utahns for Better Transp. v.*

---

[22] The Appellees argue that SUWA waived this argument, citing to our
decision in *Kane County I*. But we merely deemed the argument waived "for
purposes of th[at] appeal." *Kane Cty. I*, 597 F.3d at 1135. This is a new appeal. Scope
was not yet at issue in *Kane County I*, because title was yet to be decided. Moreover,
unlike nine years ago, when SUWA first raised scope "upon questioning at oral
argument," *see id.*, the Appellees have now been afforded a full opportunity to brief
the issue in this appeal. *See Planned Parenthood of Kan. & Mid-Mo. v. Moser*, 747
F.3d 814, 838 (10th Cir. 2014) (exercising our discretion to consider a waived issue
because the parties had an opportunity to brief the issue and because it was
"sufficiently substantial and important to demand our attention"). We thus see no
unfairness to the Appellees in considering this "substantial and important" issue. *See
id*.

*U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) (quoting *Nat'l Farm Lines v. I.C.C.*, 564 F.2d 381, 384 (10th Cir. 1977)).

SUWA is focused on pursuing the narrowest scope, but many of the stakeholders involved may want wider roads. The United States represents these broad-ranging and competing interests, too. *See San Juan Cty.*, 503 F.3d at 1230 (Ebel, J., concurring in part, and dissenting in part) ("[E]ven in this quiet title action, the United States is representing multiple interests."). Indeed, even if the United States is advocating "as well as can be expected" for the narrowest scope of the roads, its conflicting interests render its representation inadequate. *See Trbovich*, 404 U.S. at 538–39 (finding the Secretary of Labor to be an inadequate representative of a union member who sought to set aside the results of a union-officer election, because the Secretary had a statutory "duty to serve two distinct interests, which are related, but not identical"); *see also Zinke*, 877 F.3d at 1168 ("[T]he government cannot adequately represent the interests of a private intervenor *and* the interests of the public.") (emphasis in original); *Coal. of Ariz./N.M. Ctys.*, 100 F.3d at 845 ("[The government] must represent the public interest, which may differ from [the intervenor's] particular interest."); *WildEarth Guardians*, 573 F.3d at 997 (noting that the "government ha[d] multiple objectives and could well decide to embrace" some goals that the intervenor opposed).

In addition to the public interest, the United States must consider internal interests, such as the efficient administration of its own litigation resources. When pressed at oral argument about whether it was seeking a reviewable judicial order in this case, the United States responded that it "ha[s] 12,000 of these claims statewide" and is "interested in

trying to resolve them as quickly and efficiently as [it] can," *see* Oral Argument at 24:30,

an interest that SUWA certainly doesn't share.[23] Moreover, the United States opposes

SUWA's intervention motion—further indicating that it may not adequately represent

SUWA's interests here. *See San Juan Cty.*, 503 F.3d at 1230 (Ebel, J., concurring in part,

and dissenting in part) ("[T]he fact that the United States has opposed SUWA's

intervention in this action suggests that the United States does not intend fully to

represent SUWA's interests."); *cf. WildEarth Guardians*, 573 F.3d at 997 (finding

inadequate representation, in part, because the representative party, while taking no

position on intervention, objected to the idea that it be required to "coordinate filings

with" the intervenor); *Utah Ass'n of Ctys.*, 255 F.3d at 1256 ("The government has taken

no position on the motion to intervene in this case. Its silence on any intent to defend the

intervenors' special interests is deafening.") (internal quotations and alterations omitted).

Given these conflicting interests, we conclude that SUWA's and the United States'

interests are not identical. *See Utah Ass'n of Ctys.*, 255 F.3d at 1255. Therefore, no

presumption of adequate representation applies. *See id.*

Moreover, even if such a presumption were to apply, we would conclude that

SUWA has rebutted it. Our court has recognized that a "change in [presidential

a]dministration raises 'the possibility of divergence of interest' or a 'shift' during

litigation." *Zinke*, 877 F.3d at 1169 (quoting *WildEarth Guardians*, 573 F.3d at 996–97).

Here, the first significant docket activity after the new administration came into office

---

[23] An order approving a settlement agreement would be reviewable only for an abuse of discretion. *United States v. Hardage*, 982 F.2d 1491, 1495 (10th Cir. 1993).

was a motion in September 2017 to stay the case to allow settlement discussions to resolve the remaining issues. Though settlement negotiations, standing alone, are not dispositive, *see Sanguine*, 736 F.2d at 1419, the circumstances here suffice to satisfy the minimal burden to show inadequate representation. We rendered our decision in 2014 and issued the mandate in February 2015, yet, the United States showed no willingness to settle the case until two and half years later, or six months after the new administration inherited the litigation. *See E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394, 1401 (8th Cir. 1990) (reversing the denial of a second motion to intervene because "[a]lthough the [movants] had expressed concerns about possible settlement sixteen months earlier, the settlement possibility [at that time] was merely inchoate"). The United States points to its past litigation conduct in this case, such as its successful appeal in *Kane County II*, as evidence that it has no intention of "capitulat[ing]." United States' Resp. Br. at 9, 15, 24, 26–27, 32. But the *Kane County II* appeal was litigated by the previous administration. *See Utah Ass'n of Ctys.*, 255 F.3d at 1256 (noting that "the government's past conduct" in litigation is not strong evidence of adequacy because "it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts") (quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998)). Moreover, SUWA cites statements from parties involved in the litigation that further support the notion that the new administration may be more inclined to settle.[24]

---

[24] SUWA cites a State of Utah attorney's testimony before a legislative committee in 2014, stating that "the federal government has taken the position that the only way we get an R.S. 2477 road is if a court orders it." *See* Utah State Legislature, Meeting of the Natural Resources, Agricultural, and Environmental

Significantly, although SUWA will not be entitled to veto any settlement agreement between the United States and the plaintiffs, *see Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986), any settlement will require court approval. *See* Fed. R. Civ. P. 41(a) (after an "opposing party serves either an answer or a motion for summary judgment," the action may be dismissed "only by court order, on terms that the court considers proper"); *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991) ("[T]he district court must ensure that the agreement is not illegal, a product of collusion, or against the public interest."). And SUWA will be "entitled to present evidence and have its objections heard at the hearings on whether to approve" such a settlement. *See City of Cleveland*, 478 U.S. at 529. As an amicus, SUWA would have no such rights.

In conclusion, given our court's "relaxed" intervention requirements in "cases raising significant public interests" such as this one, *see San Juan Cty.*, 503 F.3d at 1201, and our "liberal approach to intervention," *see Zinke*, 877 F.3d at 1164, we hold that

---

Quality Appropriations Subcommittee, *Public Lands Office: RS 2477 Efforts and Results* (Sept. 18, 2014), available at http://utahlegislature.granicus.com/MediaPlayer.php?view_id=2&clip_id=17764. Consistent with this testimony, SUWA also cites a memo from a regional BLM director to the Acting BLM Solicitor, which states that although settlement negotiations with the previous administration had "broke[n] down," the parties agreed in April 2017 "to begin a dialogue to explore potential resolutions to the R.S. 2477 issue[s in Utah] under th[e new] administration." Appellant's App. vol. 1 at 133–34, 292–93.

SUWA has satisfied its "minimal" burden of showing that the United States may not adequately represent its interests,[25] *see Nat. Res. Def. Council*, 578 F.2d at 1345.

## CONCLUSION

Consistent with this opinion, we reverse the district court's denial of SUWA's motion to intervene.

---

[25] SUWA also argues that the administration's decision to reduce by half the Grand Staircase-Escalante National Monument presents a basis to disbelieve that the United States will, in fact, fight for the narrowest scope of the roads. As SUWA sees it, if the administration is willing to rescind protections of a vast expanse of land in the same area as the roads at issue, one could reasonably infer that it may not vigorously fight for the smallest scope of the roads. Because we find that SUWA has met its burden without this evidence, we need not address this argument.

18-4122, *Kane County v. United States*
**TYMKOVICH**, Chief Judge, dissenting.

Kane County and the State of Utah are engaged in protracted litigation against the United States under the Quiet Title Act. In 2008, the district court denied the Southern Utah Wilderness Alliance's first attempt to intervene as of right under Federal Rule of Civil Procedure 24(a), and this court affirmed that judgment on appeal in 2010, finding the United States adequately represented SUWA's purported interest. *See Kane Cty. v. United States*, 597 F.3d 1129 (10th Cir. 2010) (*Kane Cty. I*).

Today, however, this court reaches the opposite conclusion. I respectfully dissent. In my view, SUWA has not demonstrated a concrete injury giving it standing to pursue a claim in federal court, nor can it meet the requirements for mandatory intervention under Rule 24.

I will first address our jurisdiction and explain why I believe SUWA lacks standing to intervene, both under Article III and under the third-party standing doctrine. Then I will explain why, even if SUWA has standing, the district court applied the correct standard of review and did not err in denying intervention.

### A. Jurisdiction

"Standing is a threshold issue in every case before a federal court." *Phila. Indem. Ins. Co. v. Lexington Ins. Co.*, 845 F.3d 1330, 1334 (10th Cir. 2017). Our precedent is clear that a prospective intervenor must possess Article III standing. *United States v. Colo. & E. R.R. Co.*, 882 F.3d 1264, 1269 (10th Cir. 2018); *Safe*

*Streets All. v. Hickenlooper*, 859 F.3d 865, 913 (10th Cir. 2017); *see also Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017); *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013).

Ensuring that every party before a federal court possesses standing is essential because of the doctrine's underpinnings in Article III of the Constitution, which confines federal courts to adjudicating "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. The doctrine also reflects "the separation-of-powers principles underlying that limitation." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014). Entertaining parties that lack standing effectively disregards the constitutional limits that circumscribe the power of federal courts. This is because "an Article III case or controversy joined by an intervenor who lacks standing ceases to be an Article III case or controversy." *See N. Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 920 (8th Cir. 2015).

In prior cases involving SUWA, our circuit concluded that SUWA and other "parties seeking to intervene under Rule 24(a) or (b) need not establish Article III standing so long as another party with constitutional standing on the same side as the intervenor remains in the case." *San Juan Cty. v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc) (internal quotation marks omitted). But *San Juan County*'s "piggyback standing" rule has since been

-2-

abrogated.  In 2013, the Supreme Court held that "*any person* invoking the power of a federal court must demonstrate standing to do so," *Hollingsworth*, 570 U.S. at 704 (emphasis added), and affirmed that a prerequisite to "intervene[] to defend" one's interest is "to assert an injury in fact of his own," *id.* at 708.  Three years later, the Supreme Court unanimously affirmed "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing."  *Town of Chester*, 137 S. Ct. at 1651.

The majority opinion here says SUWA seeks relief identical to the United States because the government has committed to "retention of the maximum amount of property" and will argue for "the smallest widths [it] can based on the historical evidence."  *See* slip op. at 12.  But this finding conflicts with the majority's later conclusion that the United States may not adequately represent SUWA's interests because "SUWA's and the United States' interests are not identical," *id.* at 28, with respect to the scope of Kane County's asserted rights-of-way.  *See also id.* at 26 ("SUWA is focused on pursuing the narrowest scope [of road width], but many of the stakeholders involved may want wider roads.  The Unites States represents these broad-ranging and competing interests, too.").  If SUWA seeks identical relief to the United States—that is, federal retention of the maximum amount of property—then the United States provides adequate representation of SUWA's interests, as we acknowledged in *Kane*

-3-

*County I*.  If SUWA seeks relief different from the United States—because the government does not, in fact, wish to retain maximum property—then SUWA must demonstrate that it possess standing according to *Town of Chester*.[1]

This circuit has recognized the Supreme Court's abrogation of *San Juan County*'s piggyback rule for intervenor standing in several published opinions, regardless of whether the remedy sought is identical.  In *Safe Streets Alliance*, we affirmed that "Rule 24(a)'s provisions cannot remove the Article III hurdle that anyone faces when voluntarily seeking to enter a federal court."  859 F.3d at 912.  We also recognized "[t]he Supreme Court has held, moreover, that Article III's requirements apply to *all* intervenors, whether they intervene to assert a claim or defend an interest."  *Id.* (emphasis added).  We reaffirmed that principle again last year:  "*Any* party, whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims."  *United States v. Colo. & E. R.R. Co.*, 882 F.3d 1264, 1269 (10th Cir. 2018) (quoting *City of Colo. Springs*

---

[1] Perhaps the tension in the majority opinion might dissipate if this were a case in which the government had to balance various private and public interests. But because a Quiet Title Act suit is not such a dispute, the situation here is unlike *Pennsylvania v. President United States of America*, 888 F.3d 52, 59 (3d Cir. 2018), or the other Administrative Procedure Act cases cited by the majority. This is explained in greater detail in Section B.2.  In fact, the present suit resembles the case *President* distinguished, in which the proposed intervenor "share[d] the same objective as the United States" and "[a]ny differences" were "merely differences in strategy."  *United States v. Territory of the Virgin Islands*, 748 F.3d 514, 522 (3d Cir. 2014).

*v. Climax Molybdenum Co.*, 587 F.3d 1071, 1078 (10th Cir. 2009)) (emphasis added).

Despite SUWA's assertions to the contrary, our precedent shows SUWA must demonstrate it possesses independent Article III standing to intervene in this litigation. Nevertheless, the majority opines that SUWA need not establish independent standing so long as the United States remains a party. This conclusion is, in my view, a return to the abrogated reasoning of *San Juan County* in violation of clear, binding precedent.

The majority goes on to say that, in any case, SUWA *has* established standing. Our Article III and third-party standing doctrines indicate otherwise.

### 1. *Constitutional Standing*

To establish Article III standing, an intervenor must first demonstrate "an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (cleaned up). "Third, it must be 'likely,' as opposed to merely

-5-

'speculative,' that the injury will be redressed by a favorable decision." *Id.* at 561 (some internal quotation marks omitted).

An organization such as SUWA may assert associational standing if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019).

SUWA asserts its environmental concern is "a legally protectable interest" for purposes of Article III standing. *San Juan Cty.*, 503 F.3d at 1199. SUWA reasons that a wider right-of-way determination would lead Kane County to permit greater vehicular traffic, which in turn would cause a concrete and particularized injury to its environmental interests, and that this injury could be redressed by a successful defense limiting the length and width of the roads.

An injury-in-fact must be both concrete and particularized *and* actual or imminent. The asserted injury cannot merely be speculative, however. The "threatened injury must be *certainly impending* to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

-6-

SUWA is correct that environmental interests, such as "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." *Lujan*, 504 U.S. at 562–63; *see also S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1155–56 (10th Cir. 2013) (holding SUWA's environmental interests sufficiently concrete and particularized to challenge drilling leaseholds).  But SUWA merely conjectures that (1) the United States will not zealously defend its title to the relevant roads, (2) the title adjudication will thus lead to an appreciably different outcome regarding pre-1976 uses, (3) this appreciable difference will lead Kane County to open the relevant roads to greater vehicular traffic than it would have otherwise, and finally (4) the greater vehicular traffic will, at the margin, cause aesthetic environmental injury to SUWA members who may return to the particular areas in the future.

As was the case in *Clapper*, the path leading to SUWA's asserted injury is too attenuated to establish Article III standing.  This chain of events relies on a patchwork of assumptions and possibilities resulting from the decisions of multiple actors, each with its own interests and institutional checks.  A proposed party cannot rely on mere "speculation" that its members who have visited the relevant environmental locale "will find their recreation burdened" in the future due to an uncertain chain of events.  *Earth Island*, 555 U.S. at 499.  Similarly, in

*Palma* we dismissed SUWA's administrative challenge to BLM drilling permits as unripe for judicial review because "[t]here [was] simply too much uncertainty as to when and what type of drilling, if any, [would] occur on the thirty-nine contested leases."  707 F.3d at 1160.

For these reasons, I would find SUWA's alleged injury is not an imminent injury-in-fact for purposes of Article III standing.

### 2. Third-Party Standing

Even if SUWA could assert constitutional standing, it would lack standing under the third-party standing doctrine.  "[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (internal quotation marks omitted); *see also Collins*, 916 F.3d at 1312–13.

An exception to this rule may apply when "the party asserting the right has a close relationship with the person who possesses the right [and] there is a hindrance to the possessor's ability to protect his own interests."  *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017).  That exception does not apply here.  SUWA has no special relationship with the United States and there is no barrier preventing the United States from asserting its right to title.

This court previously applied the third-party standing rule to hold SUWA lacked prudential standing "to vindicate the property rights of the federal

government" in a nearly identical quiet title action. *Wilderness Soc'y v. Kane Cty.*, 632 F.3d 1162, 1165 (10th Cir. 2011) (en banc). In that case, we found SUWA improperly "rest[ed] its claims on the federal government's property rights" and failed to "assert a valid right to relief of its own." *Id.* at 1170. Even the dissent recognized that, if the statutory cause of action properly belonged to the United States, SUWA might not have standing. *See id.* at 1189–90 (Lucero, J., dissenting) (emphasizing the claim-focused nature of prudential standing and distinguishing *Warth v. Seldin*, 422 U.S. 490, 509–10 (1975)).[2]

After *Wilderness Society*, the Supreme Court substantially narrowed the category of prudential standing. *See Lexmark*, 572 U.S. 118. The Court did not, however, revisit the doctrine of third-party standing. *See id.* at 127 n.3 ("This case does not present any issue of third-party standing, and consideration of that doctrine's proper place in the standing firmament can await another day."). The Supreme Court noted the third-party standing rule is "closely related to the

---

[2] In *Wilderness Society*, SUWA relied on an implied cause of action under the Supremacy Clause of the Constitution—a cause of action which is no longer recognized, *see Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383–84 (2015), but which at the time could be asserted by anyone. This is unlike a cause of action under the Quiet Title Act, which may be raised only by a party asserting title or interest in federally claimed land.

question whether a person in the litigant's position will have a right of action on the claim." *Id.* (internal quotation marks omitted).[3]

Because *Lexmark* did not eliminate the third-party standing rule, our determination in *Wilderness Society* remains sound. Indeed, in light of *Lexmark*, its logic appears even stronger in this case. The only issue on remand from the 2014 appeal is the length and width of Kane County's easements. An organization in SUWA's position does not possess a cause of action under the Quiet Title Act because it does not assert title to the roads. *See* 28 U.S.C. § 2409a(a), (d). The cause of action properly belongs to Kane County and Utah, because they *do* assert title. Even if we assume SUWA will certainly suffer environmental injury, "that doesn't necessarily demonstrate that [it] has prudential standing to bring its . . . claims." *VR Acquisitions, LLC v. Wasatch Cty.*, 853 F.3d 1142, 1147 (10th Cir. 2017); *see also Hornish v. King Cty.*, 899 F.3d 680, 692 (9th Cir. 2018) (finding a party that possesses "no property

---

[3] Third-party standing has been traditionally considered as falling within the realm of "prudential standing." *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004). But *Lexmark* casts doubt on this categorization and suggests the notion of "prudential standing" is in "tension" with the "virtually unflagging" duty of federal courts to "hear and decide cases within its jurisdiction," *id.* at 126 (internal quotation marks omitted). It may be that the third-party standing rule, with its close connection to a party's right of action on a claim, should be considered as an aspect of Article III standing or as a merits ruling concerning the scope of the substantive right asserted.

interests" in disputed land "cannot allege any injury to such interests, and

therefore lack[s] standing" in a quiet title action).

Because SUWA's claim to relief rests "on the legal rights or interests of

third parties," *Kowalski*, 543 U.S. at 129, I would also find SUWA lacks standing

under the third-party standing doctrine.

### B. Intervention

Even if SUWA possessed standing to intervene, the district court did not

abuse its discretion in determining SUWA fails to satisfy the Rule 24

requirements.  Under Rule 24, an applicant may timely intervene as of right if it

> claims an interest relating to the property or transaction that is the
> subject of the action, and is so situated that disposing of the action may
> as a practical matter impair or impede the movant's ability to protect its
> interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  SUWA alleges it has an interest related to the property

that may be impaired in the litigation and the United States may not adequately

represent its interest.

### 1. Standard of Review

"We review the district court's denial of a motion for reconsideration for

abuse of discretion."  *United States v. Randall*, 666 F.3d 1238, 1241 (10th Cir.

2011).  "Grounds warranting a motion to reconsider include (1) an intervening

change in the controlling law, (2) new evidence previously unavailable, and (3)

the need to correct clear error or prevent manifest injustice."  *Servants of*

-11-

*Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

SUWA argues the district court improperly characterized its filing as a motion to reconsider, and that we should treat its motion as one to intervene. The majority agrees and proceeds to analyze the Rule 24 requirements of interest, impairment, and adequate representation de novo, relying on *City of Colorado Springs v. Climax Molybdenum, Co.*, 587 F.3d 1071, 1078 (10th Cir. 2009). But *Climax* does not analyze *why* the standard of review should be de novo in such a case—though presumably it was because the issue was not raised or even considered by the court. In any event, its statement that the standard of review would be de novo is pure dicta because the court never reached the merits. And this court's assurances in *San Juan County* and *Kane County I* that SUWA could always renew its motion to intervene at a later date said nothing about what the proper standard of review would be in such an instance.

On the contrary, successive motions for intervention in the same case are frequently treated as motions to reconsider. *See, e.g.*, *Abeyta v. City of Albuquerque*, 664 F.3d 792, 796 (10th Cir. 2011) (a second motion to intervene is, in effect, a motion to reconsider); *Plain v. Murphy Family Farms*, 296 F.3d 975, 978 (10th Cir. 2002) (same); *see also Whitewood v. Sec'y Pa. Dep't of Health*,

-12-

621 F. App'x 141, 144 (3d Cir. 2015) (unpublished) (finding a successive motion for intervention was properly treated as a motion for reconsideration); *Calvert Fire Ins. Co. v. Environs Dev. Corp.*, 601 F.2d 851, 857 (5th Cir. 1979) (same).

This result is rooted in the law-of-the-case doctrine and the mandate rule. *See Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1132–33 (10th Cir. 2001); *see also Ransmeier v. Mariani*, 486 F. App'x 890, 892 (2d Cir. 2012) (treating a successive motion to intervene as foreclosed by the law of the case). This is because once "a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." *Huffman*, 262 F.3d at 1132.  A district court may deviate from the law-of-the-case doctrine and mandate rule when one of the *Paraclete* circumstances is present: (1) a dramatic change in legal authority, (2) significant new evidence unobtainable earlier, or (3) blatant error resulting in manifest injustice.  *See id* at 1133.  And of course, such circumstances are the same as those justifying a motion to reconsider, which is reviewed for abuse of discretion.

Furthermore, as the majority acknowledges, SUWA based its renewed motion for intervention on changed circumstances—namely a new legal and political landscape.  *See* App. 119.  SUWA's reliance on an intervening change of law or fact tracks the test for a motion to reconsider, not a motion to intervene.

-13-

*See Paraclete*, 204 F.3d at 1012; *see also F.W. Kerr Chem. Co. v. Crandall Assoc., Inc.*, 815 F.2d 426, 428 (6th Cir. 1987) ("[A] successive motion [must] state new facts warranting reconsideration of the prior decision.").

In summary, I would apply the abuse of discretion standard to evaluate whether the district court properly denied SUWA's successive motion to intervene. That standard is more consistent with the law-of-the-case doctrine and more suitable to SUWA's changed-circumstance arguments.

### 2. Impaired Interest

SUWA argues intervention is proper because it has an environmental interest relating to wilderness lands and resources that are crossed by or adjacent to the three disputed roads. It asserts the district court erred in finding no changed circumstances under which the court should revisit its prior ruling on SUWA's impaired interest related to the roads.

This court applies a fact-specific inquiry to determine whether a proposed intervenor possesses an interest satisfying the requirements of Rule 24(a)(2) and (3). *San Juan Cty.*, 503 F.3d at 1199. The district court employed this method when it ruled on SUWA's first motion to intervene. *See Kane Cty. v. United States*, No. 2:08-CV-315, 2009 WL 959804 (D. Utah Apr. 6, 2009). There, the district court noted the "factual underpinnings of continuing controversy" that existed in *San Juan County* did not exist in the instant case. *Id.* at *2. It also

-14-

observed title was the only issue in dispute, not the management of adjacent lands or whether the roads would be open to the public once title is ascertained. *Id.* On appeal in 2010, we declined to decide whether "SUWA has an interest in the quiet title proceedings at issue." *Kane Cty. I*, 597 F.3d at 1133.

We have previously said "Rule 24(a)(2) does not speak of 'an interest *in* the property'; rather, it requires only that the applicant for intervention 'claim[] an interest *relating to* the property or transaction which is the subject of the action." *San Juan Cty.*, 503 F.3d at 1200 (quoting Fed. R. Civ. P. 24(a)(2) (emphasis added). Indeed, in *San Juan County*, we applied a fact-specific inquiry to conclude "SUWA's environmental concern [was] a legally protectable interest" related to the specific lands at issue in that case. *Id.* at 1199.[3] In *Kane County I*, however, we acknowledged "*San Juan County* does not mandate a particular outcome in this case," given the fact-dependent nature of the inquiry. 597 F.3d at 1134.

---

[3] Six judges disagreed. They explained in two separate concurrences that there "can be no logical or causal connection between the interest in land use asserted by SUWA and the dispute over land ownership in this case; a mere change in ownership will have no practical effect on the land's use, just as a change in the land's use would not affect the ownership" of the roads. *San Juan Cty.*, 503 F.3d at 1208 (Kelly, J., concurring in the judgment) (internal quotation marks omitted). In short, "it is hard to see how SUWA . . . can be considered a party to the question of what real property the United States owns, or whether the United States granted an easement to [the County] decades ago." *Id.* at 1210 (McConnell, J., concurring in the judgment).

Now that the issue is before us once again, I would conclude the district court reasonably determined the applicable law and issues on partial remand were the same as they were when the district court rendered its initial decision on SUWA's motion to intervene.  Thus, in my view, the district court did not abuse its discretion in denying SUWA's motion to reconsider.

SUWA relies on *Utah Association of Counties v. Clinton*, 255 F.3d 1246 (10th Cir. 2011), to argue that anything but the narrowest title determination will impair its environmental interest, and the court appears to adopt this reasoning, *see* slip op. at 20–21.  But unlike *Utah Association of Counties*, which involved the designation of a national monument and necessarily required balancing competing perspectives of the public interest, *see* 255 F.3d at 1248, this action simply addresses title.  Quieting title does not bring any new rights into existence or require evaluation of the public interest, it merely clarifies already existing property rights based on historical uses.[4]  *See Stenehjem*, 787 F.3d at 921.  The district court's final determination of title does not change land management or status.  More importantly, the question on partial remand is even narrower than it was the last time the district court denied intervention: title to the easements has

---

[4]  By statute, national monuments and wilderness study areas are expressly "subject to valid existing rights."  Pub. L. No. 94-579, § 701(h), 90 Stat. 2743, 2786; *accord* 43 U.S.C. § 1782(c) (providing the Secretary must manage wilderness study areas "subject . . . to the continuation of existing . . . uses").

been ascertained and only the length and width of those easements is now in question.  That inquiry turns only on pre-1976 use and does not require evaluation of competing public interests.

Because no intervening change of fact or law with respect to SUWA's alleged interest compels a different result, the district court did not abuse its discretion in declining to reconsider SUWA's motion for intervention.  The district court's decision does not prevent SUWA from presenting its environmental concerns as amicus, nor does it preclude SUWA from asserting its alleged interests through other lawsuits or administrative challenges to federal use or management of lands adjoining the road easements.

### 3. Adequate Representation

We presume adequate representation "when the objective of the applicant for intervention is identical to that of one of the parties."  *San Juan Cty.*, 503 F.3d at 1204.  This presumption applies "when the government is a party pursuing a single objective."  *Id.*  The majority opines that, like *WildEarth Guardians v. United States Forest Service*, 573 F.3d 992, 994–97 (10th Cir. 2009), and *Utah Association of Counties*, the presumption of adequate representation does not apply because the government has multiple objectives and must consider a broad spectrum of views.  But as I have already noted, this action simply addresses title.  Although a shift in government policy may be enough to upset the presumption of

-17-

adequate representation in an Administrative Procedure Act challenge, such as in
*WildEarth* or *Utah Association of Counties*, it is difficult to see how it could be
enough in a Quiet Title Act action that turns solely on pre-1976 use and does not
involve any question of land-use or management policy. *WildEarth* itself said as
much when it distinguished *San Juan County*: "We were not informed of any
potential federal policy that could be advanced by the government's relinquishing
its claim of title to the road." 573 F.3d at 997.

The last time this court considered SUWA's motion to intervene in this
litigation, it held SUWA had failed to carry its minimal burden of demonstrating
inadequate representation. We observed that "SUWA's disagreement with the
United States' land management decisions in the past does not demonstrate that
the United States is an inadequate representative in this title dispute, which is
ultimately grounded in non-federal activities that predate those management
decisions." *Kane Cty. I*, 597 F.3d at 1135. Furthermore, we noted SUWA had
waived the argument "that SUWA and the United States might disagree as to the
potential scope of Kane County's purported rights-of-way." *Id.* Today, the
majority resurrects an argument we ruled dead-on-arrival in *Kane County I* and
essentially offers SUWA a second chance to cure its waiver.

SUWA emphasizes two circumstances it says have changed since the courts
last considered its motion to intervene: (1) the change in presidential

administration, and (2) the length and width of the three rights-of-way is now

squarely presented to the district court and may be settled by the parties.

With respect to the first circumstance, SUWA extensively relates how the

current presidential administration and BLM's approach to wilderness protection

differs from that of their predecessors and explains the adversarial relations

between itself and the new administration.  This argument is nearly identical, as

the government points out, to the argument SUWA raised and we rejected in the

previous appeal—namely, that SUWA's "history of adversarial relations between

itself and [federal defendants]" is inconsistent with adequate representation.  *Id.*

at 1134.

Moreover, SUWA's perceived disagreements with the current presidential

administration or BLM over land-management policy bears little relation to how

the United States will defend title to the roads themselves.[5]  In some cases—such

as an APA suit against federal land-management policy, in which the government

---

[5] Insofar as the administration's land-management policies have excluded parts of the relevant roads from the Grand Staircase-Escalante National Monument, those policies can be and have been challenged through the APA  *See, e.g.*, *City of Carmel-By-The-Sea v. U.S. Dep't of Transp.*, 123 F.3d 1142, 1166 (9th Cir. 1997) (holding executive orders on land-use subject to judicial review under the APA); Complaint for Declaratory and Injunctive Relief, Grand Staircase Escalante Partners v. Trump, No. 17-2591 (D.D.C. Dec. 4, 2017), 2017 WL 6033875.  Such policies cannot properly be challenged through intervention in a Quiet Title Act action because reversing the United States' decision to relinquish parts of the Monument is not a possible remedy.

has multiple objectives and must balance a variety of public and private interests—a change of presidential administration can constitute a change in circumstance justifying reconsideration of adequate representation. *See W. Energy All. v. Zinke*, 877 F.3d 1157, 1169 (10th Cir. 2017).  Indeed, all the cases the majority cites are APA challenges of this sort.  But a change in presidential administration is *not* the sort of relevant change that affects adjudication of title in a Quiet Title Act action.  Our decision in *Zinke* drew this very distinction: "[T]he only issue in [*Kane County* is] whether the defendant federal government or the plaintiff county [holds] title to rights of way over federal land, and [SUWA does] not claim to have unique knowledge or experience that would assist the BLM in defense of its title."  *Id.*

With respect to the second circumstance, we recognized in *Kane County I* that SUWA waived the argument that it might disagree with the United States about the length or width of Kane County's rights-of-way.  597 F.3d at 1135. Even if we accepted that argument, as the majority does, SUWA presents no sufficient reason to doubt the United States will continue to defend its title, apart from speculation about settlement negotiations between the parties that it would still be powerless to stop as an intervenor.  The only issue on remand turns exclusively "on the historic use of these roads by the public for the period required under Utah law prior to 1976."  *Kane Cty.*, No. 2:08-CV-315, 2009 WL

959804, at *3.  And that is not an issue on which SUWA has "special expertise, experience, or knowledge" that "would not be available to the United States" in defending the scope of its title.  *Id.*  Nor does SUWA provide persuasive argument that the interests of the United States and SUWA, which are presumed to align, diverge on answering that historically bound question.

SUWA's speculation that the United States will be less than zealous to defend its title cannot explain (1) why the United States has not settled this case two years into the new presidential administration, (2) why the parties did not request further stays to continue negotiation after the stay expired last year, or (3) why extensive discovery and depositions have continued in other pending road disputes between the parties.  Nor can the majority opinion explain these present circumstances.

In my view, the district court did not abuse its discretion in concluding that SUWA's position was based on speculation and "unsupported by any evidence other than statements by the parties [in 2017] that settlement might be possible." *Kane Cty. v. United States*, No. 2:08-CV-315-CW, 2018 WL 3999575, at *3 (D. Utah Aug. 21, 2018).

* * * *

-21-

Because I believe SUWA lacks standing to intervene and because the district court did not abuse its discretion in denying SUWA's motion to intervene under Rule 24(a), I respectfully DISSENT.

**UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT
OFFICE OF THE CLERK**
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker
Clerk of Court

June 25, 2019

Chris Wolpert
Chief Deputy Clerk

To All Counsel of Record

**RE:     18-4122, Kane County, Utah, et al v. United States**
        Dist/Ag docket: 2:08-CV-00315-CW

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court

EAS/klp