FILED
**United States Court of Appeals**
**Tenth Circuit**

**February 27, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————————

KANE COUNTY, UTAH,

      Plaintiff - Appellee,

and

THE STATE OF UTAH,

      Intervenor Plaintiff - Appellee,

v.

UNITED STATES OF AMERICA,

      Defendant - Appellee.

------------------------------

SOUTHERN UTAH WILDERNESS
ALLIANCE; THE WILDERNESS
SOCIETY,

      Movants - Appellants.

No. 18-4122
(D.C. No. 2:08-CV-00315-CW)
(D. Utah)

————————————————————

**ORDER**
————————————————————

Before **TYMKOVICH**, Chief Judge, **BRISCOE, LUCERO, HARTZ, HOLMES,
BACHARACH, PHILLIPS, MORITZ, EID**, and **CARSON**, Circuit Judges.[*]
————————————————————

_____

      [*]The Honorable Scott M. Matheson and the Honorable Carolyn B. McHugh are
recused and did not participate in the consideration of the rehearing petitions.

This matter is before the court on the *Petition by United States of America for Rehearing En Banc*, and *Appellees Kane County, Utah and State of Utah's Petition for Panel Rehearing and Request for En Banc Rehearing*. Appellants have filed a consolidated response to both petitions.

The Utah Appellees' request for panel rehearing is denied by a majority of the original panel members. Chief Judge Tymkovich would grant panel rehearing.

Both petitions and the response were transmitted to all non-recused judges of the court who are in regular active service, and a poll was called. Because an equal number of participating judges voted against rehearing as voted for it, the requests for en banc rehearing are denied. *See* Fed. R. App. P. 35(a) ("[a] majority of the circuit judges who are in regular active service" may order en banc rehearing).

Chief Judge Tymkovich, as well as Judges Hartz, Holmes, Eid and Carson would grant en banc rehearing. Judge Phillips has filed a separate concurrence in the denial of en banc rehearing, which Judge Briscoe joins. Chief Judge Tymkovich has written separately in dissent. Judges Hartz and Holmes join in Part II of the dissent, and Judges Eid and Carson join the dissent in full.

Entered for the Court,

CHRISTOPHER M. WOLPERT, Clerk

No. 18-4122, *Kane County, Utah, et al. v. United States*

**PHILLIPS**, Circuit Judge, joined by **BRISCOE**, Circuit Judge, concurring in the denial of rehearing en banc.

This case fails the standard governing en banc consideration. *See* Fed. R. App. P. 35(a)(1) and 10th Cir. R. 35.1(A). Our local rule directs us that "[a] request for en banc consideration is disfavored[,]" and that "[e]n banc review is an extraordinary procedure intended to focus the entire court on an issue of exceptional public importance or on a panel decision that conflicts with a decision of the United States Supreme Court or of this court." 10th Cir. R. 35.1(A).

In this case, the en banc dissent contends that the panel decision conflicts with controlling precedent. Obviously, this requires a greater showing than that the en banc dissenters would have ruled differently than did the panel.[1] With this in mind, I will discuss how the panel-majority's opinion fits well within controlling precedents. In fact, as will be seen, much of the panel-majority's opinion is compelled by binding precedent, and the remainder properly rested with the panel to decide.

## I. Panel Rulings Alleged to Contravene Supreme Court and Tenth Circuit Precedents

### A. *Standing*

---

[1] In this regard, we must be mindful to filter out any attempts to reargue our earlier precedents. Here, that is particularly important to remember when encountering the en banc dissent's discussion of *San Juan County v. United States*, 503 F.3d 1163 (10th Cir. 2007) (en banc).

In *Kane County v. United States* (*Kane III*), 928 F.3d 877 (10th Cir. 2019), the case now before us, the panel majority concluded that the Southern Utah Wilderness Association (SUWA) had established standing to seek intervention as of right under Fed. R. Civ. P. 24(a)(2). The panel ruled that SUWA had met the standing requirement in two separate ways—piggyback standing and Article III standing. Either suffices.

1. Piggyback Standing

Applying the rule announced in *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017), the panel majority first ruled that SUWA had established piggyback standing[2] to proceed with its motion to intervene. *Kane III*, 928 F.3d at 886–87. The panel acknowledged that the availability of piggyback standing had narrowed from when we applied that doctrine in *San Juan County v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc). Specifically, the panel majority addressed that point as follows:

> But ten years later [after *San Juan County*], the Supreme Court modified our "piggyback standing" rule, holding that an intervenor as of right must "meet the requirements of Article III if the intervenor wishes to pursue relief not requested" by an existing party. *Town of Chester,* . . . 137 S. Ct at 1648[.] In that case, the record was ambiguous whether the intervening plaintiff was seeking a different form of relief from the existing plaintiff: a separate award of money damages against the same defendant in its own name. *Id.* at 1651–52. Because "[a]t least one [litigant] must have standing to seek each form of relief requested," the Court remanded for the circuit court to determine whether the intervenor, in fact, sought "additional relief beyond" what the plaintiff requested. *Id.* at 1651.

---

[2] This term refers to the situation in which a proposed intervenor relies on the Article III standing of a party to a lawsuit. *See United States v. Colo. & E. R.R.*, 882 F.3d 1264, 1268 (10th Cir. 2018) ("NDSC could not 'piggyback' on the standing of one of the described parties to the Consent Decree because there was no current case or controversy pending before the court on the part of those parties[.]").

Citing *Town of Chester*, Kane County argues that SUWA cannot simply invoke the United States' Article III standing, contending that SUWA and the United States are pursuing different relief. We disagree with that view. After all, the United States has informed us that it seeks "retention of the maximum amount of property" and will argue for "the smallest widths [it] can based on the historical evidence," the same relief that SUWA seeks. *See* United States' Resp. Br. at 22, 32; Oral Arg., at 18:30.

*Kane III*, 928 F.3d at 886–87 (second, third, and fourth alterations in original) (footnotes omitted). As seen, the *Kane III* panel majority applied piggyback standing in accordance with *Town of Chester*. Piggyback standing was available because the United States and SUWA seek the *same relief*.

The en banc dissent disputes the panel-majority's ruling that SUWA satisfied piggyback standing under *Town of Chester*. **First**, the en banc dissent asserts that the panel majority "held that SUWA was excused from establishing standing, or, in the alternative, that it had adequately done so." En banc dissent at 3 (citing *Kane III*, 928 F.3d at 886–89). Certainly, the panel majority ruled that SUWA could piggyback the United States' Article III standing. But the panel majority correctly applied the *Town of Chester* standard in doing so. **Second**, the en banc dissent correctly asserts that under *Town of Chester*, "where an intervenor pursues separate relief from a party, it must establish standing under Article III." *Id.* at 4 (citing *Town of Chester*, 137 S. Ct at 1648) (emphasis removed). But the en banc dissent wrongly ascribes to the panel majority a position it never took, saying that "[a]ccording to the majority, SUWA's interests are thus similar enough to the United States' to avoid having to establish its own standing under *Town of Chester*." *Id.* at 6. In fact, the block quote above shows that the panel majority disagreed with Kane County's argument that "SUWA and the United States are pursuing

different relief." *Kane III*, 928 F.3d at 887. After reciting how the United States

characterized its own interest, the panel majority concluded that the United States was

seeking "the *same relief* that SUWA seeks." *Id.* (emphasis added). This being so, the

panel majority allowed SUWA to piggyback on the United States' Article III standing.

*Id*. The en banc dissent errs in saying that the panel majority read *Town of Chester* as

approving piggyback standing when an intervenor's and party's interests are "similar

enough." *See* en banc dissent at 6. **Third**, the en banc dissent claims that the majority

read *Town of Chester* as embracing a "more expansive point"[3] than permitted by

*Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013), and two of this court's decisions[4]

---

[3] Immediately before this statement, the en banc dissent cites *Town of Chester* as "holding merely that '*at the least*, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond which the plaintiff requests.'" En banc dissent at 4–5. The Court's point preceding these quoted words was that just as with plaintiffs and multiple plaintiffs, "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint." *Town of Chester*, 137 S. Ct. at 1651. The Court next simply states that "[t]he same principle applies to intervenors of right." *Id.* That gives the en banc dissent no basis to say that the *Kane III* panel majority reads *Town of Chester* expansively.

[4] In particular, the en banc dissent cites two Tenth Circuit cases. First, it cites *Colorado & Eastern Railroad*, 882 F.3d at 1269. En banc dissent at 5. Unlike *Hollingsworth* at least, *Colorado & Eastern* was decided after *Town of Chester*, in fact by eight months. But *Colorado & Eastern* had no reason to address *Town of Chester*, because *Colorado & Eastern* raised no piggyback-standing issue. *Colo. & E. R.R.,* 882 F.3d at 1269. Instead, the intervenor-appellant there asserted standing solely under Article III. *Id.* Facing that issue, we ruled that the intervenor-appellant had failed to establish Article III standing, reasoning that "the record conclusively establishes that the relief requested by NDSC will not redress any assumed injury to it caused by C & E[.]" *Id.* Second, it cites *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 912 (10th Cir. 2017). En banc dissent at 5. That case came two days after *Town of Chester* and did not cite it. Instead, *Safe Streets Alliance* cited *Hollingsworth* as abrogating *San Juan County*'s expansive piggyback-standing rule. *Safe Streets All.*, 859 F.3d at 912; *Cf. San Juan Cty.*, 503 F.3d at 1172 (holding "that parties seeking to intervene under Rule 24(a)

"establishing that *any* person seeking relief from a federal court must demonstrate standing to do so." En banc dissent at 5 (next quoting *Hollingsworth* in a parenthetical for the proposition that "[o]ne essential aspect of [the powers conferred by Art. III] is that any person invoking the power of a federal court must demonstrate standing to do so"). But *Hollingsworth* must be read in accordance with *Town of Chester*, which was decided four years later. **Fourth**, the en banc dissent mixes into its Article III standing analysis its Rule 24(a)(2) adequacy-of-representation analysis. *Id.* at 6-7. The two analyses do not mix this way. For piggyback standing, *Town of Chester* tells us exactly what to consider here—that is, whether the intervenor is seeking the *same* relief as a party is. 137 S. Ct. at 1651. By contrast, the Rule 24(a)(2) adequacy-of-representation analysis looks not only to the degree of similarity of the sought interests but to the degree the party will assert them. *See San Juan Cty.*, 503 F.3d at 1206. The panel majority applied the piggyback-standing requirements in accordance with *Town of Chester*, and in doing so it contravened neither Supreme Court nor Tenth Circuit law.

### 2. Article III Standing

Separate and apart from piggyback standing, the majority panel ruled that SUWA had shown its own standing under Article III. In this regard, the majority recognized that

---

or (b) need not establish Article III standing 'so long as another party with constitutional standing on the same side as the intervenor remains in the case'"). The panel majority acknowledged the demise of *San Juan County*'s broad piggyback standing rule and turned to *Town of Chester*. *See Kane III*, 928 F.3d at 887. But just as *Safe Streets Alliance* needed to acknowledge and apply *Hollingsworth*, so too did the panel majority here need to acknowledge and apply *Town of Chester*.

SUWA needed to show "(1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision." *Kane III*, 928 F.3d at 888 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

In concluding that SUWA had met these requirements, the panel majority turned to the primary case the en banc dissent claims the majority's decision contravenes—*San Juan County*. The panel majority noted that "[h]ere, as in *San Juan County*, it is 'indisputable that SUWA's environmental concern is a legally protectable interest.'" *Kane III*, 928 F.3d at 888 (citing *San Juan Cty.*, 503 F.3d at 1199).[5] We noted that "[i]n *San Juan County*, we recognized that 'if the County prevails, it will then pursue opening the road to vehicular traffic that SUWA has been trying to prevent.'" *Id.* (citing *San Juan Cty.*, 503 F.3d at 1200). We explained that in *San Juan County* we had seen "nothing speculative about the impact on SUWA's interests if the County prevails in its quiet-title action" and further noted that *San Juan County* had stated that the opening of roads was the whole point of the lawsuit. *Kane III*, 928 F.3d at 888 (quoting *San Juan Cty.*, 503 F.3d at 1201–02) (internal quotation marks omitted). And we "acknowledge[d] that *San*

---

[5] In a footnote, the panel majority stated that "[t]hough this portion of the opinion concerned the potential impairment of SUWA's interests under Rule 24(a)(2), other courts have recognized that 'any person who satisfies Rule 24(a) will also meet Article III's standing requirement.' *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *see also Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000) ('Any interest of such magnitude as to support Rule 24(a) intervention of right is sufficient to satisfy the Article III standing requirement as well.') (internal quotations and alterations omitted)." *Kane III*, 928 F.3d at 888 n.14.

*Juan County* involved the possibility of reopening closed roads, as opposed to widening already-opened roads, as here—but we view both as sufficient degrees of impact." *Kane III*, 928 F.3d at 888–89. On this point, we observed that "[a] 24–foot road allows more traffic than a 10– or 12–foot road (in the case of North Swag and Swallow Park roads), and a 66–foot road allows more traffic than a 24– to 28–foot road (in the case of Skutumpah Road)." *Id.* at 889.

In my view, the en banc dissent does not fully credit that the seven-judge majority in *San Juan County* ruled that SUWA had established a protectible interest under Fed. R. Civ. P. 24(a)(2). The *Kane III* panel majority merely followed in its wake.

## B. Right to Intervene Under Fed. R. Civ. P. 24(a)(2)

### 1. Title or Property-Rights Dispute

The en banc dissent describes the underlying suit as one solely involving property law, an ownership dispute between the governmental parties. En banc dissent at 1–2, 7, 9. From this, it concludes that "[a]s a quiet title action, this dispute focuses solely on the various ownership rights the parties have in the disputed rights-of-way. SUWA has no role in such litigation because it lacks any independent ownership claim in the disputed property." *Id.* at 9. From this, I gather that the dissent concludes that environmental groups (or any others lacking an ownership claim) can never intervene in R.S. 2477 suits. *See id.* (saying that "[t]he nature of the suit [described as a property dispute] further compels this result"—that SUWA cannot show standing under Article III). This ignores the *San Juan County*'s seven-judge majority's two-sentence statement that "[w]e recognize that SUWA does not claim that it has title to Salt Creek Road, even though this

is a quiet-title suit. But Rule 24(a)(2) does not speak of 'an interest in the property'; rather, it requires only that the applicant for intervention 'claim[ ] an interest *relating to* the property or transaction which is the subject of the action.'" 503 F.3d at 1200 (quoting Fed. R. Civ. P. 24(a)(2)) (alterations in original).

In addition, as mentioned, the seven-judge majority in *San Juan County* agreed that SUWA had satisfied the first portion of Fed. R. Civ. P. 24(a)(2)—namely, that in that R.S. 2477 suit involving the Salt Creek Road, SUWA had "claim[ed] 'an interest relating to the property or transaction which is the subject of the action and . . . is so situated that the disposition of the action may as a practical matter impair or impede [the movant's] ability to protect [its] interest.'" *See* 503 F.3d at 1201. I agree that six judges would have held differently. *Id.* at 1210 (Kelly, J., concurring[6]) (concluding that "SUWA ha[d] not 'asserted an interest'" relating to the property at issue in the lawsuit); *id.* (McConnell, J., concurring[7]) (agreeing with the three-judge lead opinion's "conclusion that the district court correctly denied SUWA's motion to intervene, but . . . not agree[ing] with its reasoning"). In view of the *San Juan County* split, I do not see how the *Kane III* panel-majority's opinion would contravene *San Juan County*.

Next, the en banc dissent says that the panel majority contravened *Kane County v. United States* (*Kane I*), 597 F.3d 1129 (10th Cir. 2010). En banc dissent at 3, 11 n.5, 12.

---

[6] Joined by Chief Judge Tacha and Judges Porfilio, O'Brien, McConnell, and Holmes.

[7] Joined by Chief Judge Tacha and Judges Porfilio, Kelly, O'Brien, and Holmes.

But as the panel majority detailed in *Kane III*, the *Kane I* panel declined to consider whether the United States had adequately represented SUWA on the scope of the rights-of-way (as opposed to the binary determination of title). It declined for one reason—that SUWA had failed to preserve the argument. 928 F.3d at 883 (citing *Kane I*, 597 F.3d at 1135). And on that point, the *Kane I* panel—as had the seven-judge majority in *San Juan County*—acknowledged that SUWA may later try again to intervene on scope grounds despite having waived the ability to do so in that particular appeal. *See Kane I*, 597 F.3d at 1135 (ruling that SUWA "has failed to establish, at this stage of the litigation, that the federal government will not adequately protect its interest"); *San Juan Cty.*, 503 F.3d at 1207 (noting that this denial of SUWA's motion to intervene "does not forever foreclose SUWA from intervention" and that "[i]f developments after the original application for intervention undermine the presumption that the Federal Defendants will adequately represent SUWA's interest, the matter may be revisited").

### 2.    Adequacy of Representation

On this question, the seven-judge majority in *San Juan County* split into two opinions. In Part IV(B) of Judge Hartz's three-judge lead opinion, he concluded that the United States would adequately represent SUWA's interests. *See id.* at 1203–07. In Judge Ebel's four-judge opinion, he concurred in all but this part of Judge Hartz's opinion. *See id.* at 1226–27. As mentioned, the remaining six judges concurred in judgment but did not comment on the adequacy-of-representation issue. Thus, because blocs of three-judges and six-judges concluded that SUWA had not shown that it was entitled to

intervene (for different reasons), the Judge Hartz three-judge opinion became the lead opinion on the adequacy-of-representation issue.

The *Kane III* panel majority did not contravene *Kane I*, which had denied SUWA intervention on adequacy-of-representation grounds. As mentioned, in *Kane I*, the court raised the possibility that the adequacy-of-representation result might hinge on SUWA's having relied on scope as well as title, but the panel ruled that SUWA had waived that issue on appeal. So *Kane I* obviously did not take a view that *San Juan County* somehow rendered the scope issue as off limits.

Nor could *Kane I* have taken such a view. The three-judge lead opinion in *San Juan County* runs forty pages, about four of which pertain to the adequacy-of-representation issue. In the lead opinion, Judge Hartz looked to the amended complaint's claims, including one for declaratory judgment, and he noted that the district court when denying intervention to SUWA had "stated that 'the pleadings define the case in a very narrow fashion[:] the existence or non-existence of a right-of-way and its length and its breadth[.]'"[8] *San Juan Cty.*, 503 F.3d at 1206. He then held that "on the record before us, SUWA will be adequately represented by the Federal Defendants with respect to the

_____

[8] The en banc dissent contends that the panel majority "reads the lead opinion from *San Juan County* as consistent with its conclusion that the scope of the rights-of-way was not at issue in that case." En banc dissent at 11 n.5. In opposition, the en banc dissent quotes a portion of *San Juan* referencing a portion of the amended complaint in *San Juan* alleging that "the right-of-way must be sufficient in scope for vehicle travel[.]" *Id.* (quoting *San Juan Cty.*, 503 F.3d at 1171). I agree the amended complaint alleged this and that scope ultimately needed determined, but the amended complaint's allegation does not refute the above-quoted portions of *San Juan*'s lead opinion.

10

quiet-title claim." *Id.* Presumably speaking to that record, which becomes important, he "recognize[d] that SUWA and the NPS have had their differences over the years regarding Salt Creek Road[,]" but emphasized that "when SUWA filed its application to intervene, the Federal Defendants had only a *single litigation objective*—namely, *defending exclusive title to the road*—and SUWA could have had *no other objective* regarding the quiet-title claim." *Id.* (emphasis added). He continued along this line when noting that "[t]he Federal Defendants have displayed no reluctance, at least so far as the record before us shows, *to claim full title* to Salt Creek Road." *Id.* (emphasis added). He noted that "SUWA has given us no reason to believe that the Federal Defendants have any interest in relinquishing to the County *any part of the federal title* to the road." *Id.* at 1207 (emphasis added). And perhaps most importantly, he also noted that though "the Federal Defendants may not wish to exercise their authority as holder of title in the same way that SUWA would wish,[9] *the district court did not treat such exercise of authority as being at issue in this litigation when SUWA's application for intervention was rejected*." *Id.* 1206–07 (footnote and emphasis added).

Judge Hartz's three-judge lead opinion addressed Judge Ebel's four-judge opinion (which had dissented on the adequacy-of-representation issue) in just one respect. Judge Hartz stated that "we are not inclined to infer from the Federal Defendants' opposition to intervention that they will fail to vigorously resist the claim to an RS 2477 right-of-way." *Id.* at 1206. He did not comment on Judge Ebel's extensive discussion about how the

---

[9] This sounds to me as a recognition that the United States and SUWA might well disagree on the scope of any rights-of-way.

United States "may not adequately represent" SUWA's interest on the scope of the right-of-way. *See Id.* at 1227 (Ebel, J., concurring in part and dissenting in part).

With this background in *San Juan County*, it is no wonder the *Kane I* panel, after reviewing the *San Juan County* case, commented that "*San Juan County* does not mandate a particular outcome in this case[.]" 597 F.3d at 1134. The panel noted that SUWA had not argued in the district court for a more nuanced "determination encompassing 'not only whether there [wa]s any right-of-way, but also the nature and scope of that right-of-way if it d[id] exist.'" *Id.* (quoting *San Juan Cty.*, 503 F.3d at 1228 (Ebel, J., concurring in part and dissenting in part)). Though SUWA, upon questioning at oral argument in *Kane I*, argued that it "and the United States might disagree as to the potential scope of Kane County's purported rights-of-way[,]" the court held that argument waived "for purposes of this appeal[.]" *Id.* at 1335.

For the reasons given, I respectfully submit that the *Kane III* majority panel did not contravene any Supreme Court or Tenth Circuit caselaw, which defeats the present request for en banc consideration.

No. 18-4122, *Kane County, Utah, et al. v. United States*

**TYMKOVICH**, Chief Judge, joined as to Part II by **HARTZ** and **HOLMES**, Circuit

Judges, and joined in full by **EID** and **CARSON**, Circuit Judges, dissenting from the

denial of rehearing en banc.

This case should be reheard en banc. The panel majority's decision rests on an

overbroad understanding of Article III standing and extends a right of intervention to

third parties who have no legal interest at issue in the dispute. In doing so, the majority

contravenes Supreme Court precedent and that of this court, and thus should be corrected.

Moreover, the decision opens the intervention doors to parties that wish to disrupt

property disputes between the United States and state and local governments—a common

occurrence in the Western United States—and make them proxy battlegrounds for the

airing of specialty interests.

This case is one of many regarding the scope of unadjudicated road claims across

the American West.[1] The Southern Utah Wilderness Alliance (SUWA) wishes to

intervene and shape the litigation; Utah and the United States assert SUWA has no

interest that will not be adequately represented by the United States. Although this court

has become accustomed to interest group participation in cases regarding the

administration of public lands, this is no such case. Instead, all that is presently before

the court is a property dispute that will be resolved by looking to the pre-1976 uses of the

---

[1] As the United States asserts, it currently faces "more than 12,000" R.S.
2477 claims in Utah alone. Pet. by United States for Reh'g En Banc 8.

lands at issue.  After adjudication of the property claims, when and if the court is

presented with the question of how best to *administer* such property, the logic and

rationale of the majority's opinion may prove sufficient to permit SUWA's participation.

But to extend such reasoning here contravenes established principles of standing and

intervention.  *See San Juan Cty. v. United States*, 503 F.3d 1163, 1211 (10th Cir. 2007)

(McConnell, J., concurring) ("As citizens and users, SUWA's members have enforceable

statutory rights regarding how the land is administered *if* the United States owns the land,

but they have no legal rights regarding *whether* the United States owns the land.").

   The instant suit is a R.S. 2477 roadway case[2]—an ownership dispute between the

United States on the one hand and the State of Utah and Kane County on the other.   The

underlying controversy has a long history, but all that presently remains is a

determination of the width and length of three rights-of-way that Kane County and the

State of Utah possess.  *See Kane Cty. v. United States*, 772 F.3d 1205, 1223 (10th Cir.

2014) (*Kane II*).

   The question is one of property law.  And the answer turns exclusively "on the

---

   [2] In 1866, Congress granted public access to unreserved public lands by
providing that the "right of way for the construction of highways over public lands,
not reserved for public uses, is hereby granted."  Mining Act of July 26, 1866, ch.
262, § 8, 14 Stat. 251, 253 (1866) (codified at 43 U.S.C. § 932).  This statute is
commonly referred to as "R.S. 2477."  In 1976, Congress repealed this broad grant,
but grandfathered in all "valid" rights of way in existence at the time.  *See* Pub. L.
No. 94-579, §§ 701(a), 706(a), 90 Stat. at 2786, 2793.  Accordingly, those claiming
a right of way may sue for quiet title to the property under the Quiet Title Act, as
the Utah entities did here.

historic use of these roads by the public for the period required under Utah law prior to 1976." *Kane Cty. v. United States*, No. 2:08-CV-315, 2009 WL 959804, at *3 (D. Utah Apr. 6, 2009); *see also Kane II*, 772 F.3d at 1223.

In 2008, Kane County first sued the United States under R.S. 2477 and the Quiet Title Act to quiet title in fifteen roads that cross federal land, including the three rights-of-way presently in dispute. Shortly thereafter, SUWA moved to intervene. *See Kane Cty.*, 2009 WL 959804, at *1. The district court denied SUWA's motion and this court affirmed. *See Kane Cty. v. United States*, 597 F.3d 1129 (10th Cir. 2010) (*Kane I*). After a bench trial, the district court held Kane County and the State of Utah proved their claims with respect to twelve of the roads in question, and it resolved the scope of those rights-of-way. *See Kane Cty. v. United States*, No. 2:08-cv-00315, 2013 WL 1180764, at *62–65 (D. Utah Mar. 20, 2013). The United States appealed the district court's decision, and this court reversed in part, leaving the scope of the three rights-of-way currently at issue as the sole remaining matter pending in this case. *Kane II*, 772 F.3d at 1223.

Although SUWA does not claim title to the roads, it now again seeks to intervene, alleging interests and inadequate representation relating to the hypothetical future use of the three remaining rights-of-way. The district court denied SUWA's motion. The panel majority's opinion reversed. *Kane Cty. v. United States*, 928 F.3d 877, 887 (10th Cir. 2019) (*Kane III*). The majority first held that SUWA was excused from establishing standing, or, in the alternative, that it had adequately done so. *Id.* at 886–89. The majority further held that SUWA was entitled to intervene as of right under Federal Rule

of Civil Procedure 24(a) because SUWA had shown an interest at risk of being impaired and that the United States may not adequately represent SUWA's interests.  *Id.* at 891–96.

The majority's opinion conflicts with our precedent and that of the Supreme Court on two issues—standing and intervention.

### I. *Article III Standing*

"Standing is a threshold issue in every case before a federal court."  *Phila. Indem. Ins. Co. v. Lexington Ins. Co.*, 845 F.3d 1330, 1334 (10th Cir. 2017).  The majority's opinion enlarges Article III standing in contravention to Supreme Court authority in two ways.  As a threshold matter, it holds SUWA, as an intervening party, need not establish standing.  *Kane III*, 928 F.3d at 886–87.  Then, in the alternative, it finds SUWA nonetheless cleared this necessary hurdle.  *Id.* at 888–89.

### A. *Applicability of the Standing Requirement*

To intervene, SUWA must establish standing.  The majority relies on *Town of Chester v. Laroe Estates, Inc*., for the proposition that SUWA need not establish standing because it seeks the same relief as the United States.  *See Kane III*, 928 F.3d at 887–88 (citing 137 S. Ct. 1645 (2017)).  *Town of Chester*'s holding was a narrow one—where an intervenor pursues *separate relief* from a party, it must establish standing under Article III.  *See* 137 S. Ct. at 1648.  But the case assuredly does not hold that where the intervenor seeks relief *similar* to the existing parties, it may avoid establishing standing.  *See id.* at 1651 (holding merely that "*at the least*, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff

4

requests" (emphasis added)).  The majority's reading of *Town of Chester* to embrace this more expansive point conflicts with case law from the Supreme Court and this court establishing that *any* person seeking relief from a federal court must demonstrate standing to do so.  *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) ("One essential aspect of [the powers conferred by Art. III] is that any person invoking the power of a federal court must demonstrate standing to do so."); *United States v. Colo. & E. R.R. Co.*, 882 F.3d 1264, 1269 (10th Cir. 2018) ("Any party, whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims."); *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 912 (10th Cir. 2017) ("Rule 24(a)'s provisions cannot remove the Article III hurdle that *anyone* faces when voluntarily seeking to enter a federal court.").

The majority's attempt to distinguish these cases falls short.  With respect to *Colo. & E. R.R.*, the majority quotes a description of the district court's opinion, claiming that the case is inapposite because there was no "live controversy" between the parties in *Colo. & E. R.R.* and here there is.  *See Kane III*, at 887 n.11.  This point is not what the decision on appeal was based on.  *See Colo. & E. R.R. Co.*, 882 F.3d at 1269 ("Because the record conclusively establishes that the relief requested by [the party seeking to establish standing] will not redress any assumed injury to it . . . we resolve [the] appeal on that basis.").  With respect to *Safe Streets* and *Hollingsworth*, the majority argues the statements in *Safe Streets* were merely dicta and that, regardless, *Hollingsworth* "applied the piggyback standing rule."  *Kane III*, at 887 n.11.  But nothing in *Hollingsworth*

5

suggests its statements with respect to standing constitute an affirmation of the piggyback standing rule. Indeed, this court has already recognized *Hollingsworth* as abrogating that rule. *See Safe Streets*, 859 F.3d at 913.

Accordingly, under *Town of Chester*, *Hollingsworth,* and our precedent, SUWA invariably must establish standing in order to join this suit. In excusing SUWA from this requirement, the majority performed an end-run around the constitutional limit that Article III places on the power of the federal courts. *Hollingsworth*, 570 U.S. at 704.

Even accepting the majority's premise that standing is excused where an intervenor seeks similar relief to that of an existing party, the majority's conclusion still suffers a fatal inconsistency. To justify its contention that SUWA seeks the same relief as the United States, the majority concedes that the United States "seeks retention of the maximum amount of property and will argue for the smallest widths it can based on the historical evidence"—in other words, "the same relief that SUWA seeks." *Kane III*, 928 F.3d at 887. According to the majority, SUWA's interests are thus similar enough to the United States' to avoid having to establish its own standing under *Town of Chester*. But this contradicts the majority's later conclusion that the United States will not adequately represent SUWA's interests. *See Kane III*, 928 F.3d at 898 (Tymkovich, J., dissenting) ("If SUWA seeks identical relief to the United States—that is, federal retention of the maximum amount of property—then the United States provides adequate representation of SUWA's interests . . . . If SUWA seeks relief different from the United States—because the government does not, in fact, wish to retain maximum

property—then SUWA must demonstrate that it possess standing according to *Town of Chester*.").

Were this a case regarding the administration of the land at issue, as opposed to merely its ownership, the majority could potentially thread the needle in the manner it seeks to here. *See Kane III*, 928 F.3d at 898 n.1 (Tymkovich, J., dissenting). For example, in administrative cases like the ones cited by the majority, the United States usually must consider a wide array of interests and engage in extensive balancing. *See, e.g.*, *Doe v. Zucker*, No. 117-CV-1005, 2019 WL 111020 (N.D.N.Y. Jan. 4, 2019). This could lead to the type of symmetry in relief sought, yet asymmetry in ultimate resolution objectives, that could justify intervention along the lines the majority proposes. But in the context of a property dispute like the present one, such fine distinctions break down.

### B. SUWA's Standing

Perhaps realizing SUWA must demonstrate standing to intervene, the majority holds that SUWA established standing. *See Kane III,* 928 F.3d at 888. That conclusion is in error. SUWA's alleged injury is too attenuated and speculative to provide standing under Article III to participate in this suit regarding the relative property rights of the United States and the Utah entities.

To establish Article III standing, an intervenor must first show "'an injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). Second, there must be a "causal

connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant.'" *Id*. Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561.

SUWA's argument, adopted by the majority, stands on a series of conjectures regarding hypothetical future land use. To conclude SUWA has standing, one must assume: "(1) the United States will not zealously defend its title to the relevant roads, (2) the title adjudication will thus lead to an appreciably different outcome regarding pre-1976 uses, (3) this appreciable difference will lead Kane County to open the relevant roads to greater vehicular traffic than it would have otherwise, and finally, (4) the greater vehicular traffic will, at the margin, cause aesthetic environmental injury to SUWA members who may return to the particular areas in the future." *Kane III*, 928 F.3d at 899–900 (Tymkovich, J., dissenting). This attenuation proves too much.

As the Court found in *Clapper v. Amnesty International USA*, such a theory of "future injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" 568 U.S. 398, 401 (2013). In *Clapper*, the Court declined to find that human rights, labor, legal, and media organizations had standing to challenge the Foreign Intelligence Surveillance Act as unconstitutional because the Court found allegations that the organizations would be subject to the surveillance authorized by the Act too speculative. The Court noted its reluctance "to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."

8

*Id.* at 413. The Court's hesitancy is well-founded and should be applied here to preclude SUWA from joining this case where its only supposed injury relies on a highly attenuated chain of possibilities. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (rejecting environmental organizations' standing claims where they were similarly premised on a series of speculation).

The nature of the suit further compels this result. As a quiet title action, this dispute focuses solely on the various ownership rights the parties have in the disputed rights-of-way. SUWA has no role as a party in such litigation because it lacks any independent ownership claim in the disputed property.[3] This case does not create any new property rights, does not concern the administration of the land at issue, and will not directly result in any physical changes to the subject property. Instead, it concerns solely what property rights exist in light of pre-1976 uses of the roads at issue. *See Kane II*, 772 F.3d at 1223–24.

Moreover, any future improvements that Kane County might make that could significantly affect the surrounding lands will require additional consultation with the federal government. *See S. Utah Wilderness All. v. BLM*, 425 F.3d 735, 748–49 (10th Cir. 2005) ("[E]ven legitimate changes in the character of the roadway require consultation when those changes go beyond routine maintenance."). In short, although

---

[3] In reaching this conclusion, I need not, and do not, take the position that an environmental group "can never intervene" in an R.S. 2477 suit. En banc concurrence at 7. Nor does anything preclude SUWA's continued participation as an *amicus curiae* in the present suit.

SUWA may have valid considerations it wishes to present to whichever party owns the property at issue regarding how to manage that land, this is not the forum to present these arguments.  The present suit merely concerns which regulator will be the recipient of such advocacy in the future as the owner of, and therefore the party responsible for administering, the land.

## II.  Intervention and the Adequacy of the United States' Representation

Finally, the majority erred in holding that the United States may not adequately represent SUWA's interests.[4]  *Kane III*, 928 F.3d at 892.  "Even if an applicant satisfies the other requirements of [Federal Rule of Civil Procedure] 24(a)(2), it is not entitled to intervene if its interest is adequately represented by existing parties."  *San Juan Cty.*, 503 F.3d at 1203.  Where the applicant for intervention has the same objective as one of the

_____

[4]  I would review the district court's decision on adequacy of representation for abuse of discretion.  *See Kane III*, 928 F.3d at 901–02 (Tymkovich, J., dissenting) (citing *Abeyta v. City of Albuquerque*, 664 F.3d 792, 796 (10th Cir. 2011) and *Plain v. Murphy Family Farms*, 296 F.3d 975, 978 (10th Cir. 2002)).  The majority relies on *City of Colorado Springs v. Climax Molybdenum Co.* in concluding this court should review the district court's decision de novo.  *Kane III*, 928 F.3d at 889.  In *Climax*, this court considered a consecutive motion to intervene and noted, in dicta, that if it reached the merits of the appeal, the appropriate standard of review for the district court's denial of the motion to intervene as of right would be de novo.  *See* 587 F.3d 1071, 1078 (10th Cir. 2009).  The court never reached the merits.  Further, in that case, neither party disputed de novo review and neither party argued that the motion was properly considered a motion for reconsideration.  For these reasons, I find *Climax* distinct from the present case and unpersuasive.  Nonetheless, even reviewing the district court's decision de novo, I believe SUWA failed to show that the United States may not adequately represent its interests.  Accordingly, I apply, *arguendo*, that standard of review here.

parties, a "general presumption" exists that representation is adequate. *Id.* at 1204.
Notably, the majority concluded the United States may not adequately represent SUWA's
interests despite two prior statements from this court to the contrary. *See San Juan Cty.*,
503 F.3d at 1204–06; *Kane I*, 597 F.3d at 1134.

In *San Juan County*, the judgment of this court denying SUWA the right to
intervene rested, at least in part, on the fact that the United States adequately represented
SUWA's interest. *See* 503 F.3d at 1204. In *Kane I*, this court similarly held that SUWA
had no right to intervene in this case because the United States adequately represented
SUWA's interest. *See* 597 F.3d at 1135. Rather than adhering to these precedents, the
majority departs, expressly adopting the reasoning of an opinion that gained only four
judges' allegiance in *San Juan County*.[5] *See Kane III*, 928 F.3d at 893–94 (citing *San
Juan Cty.*, 503 F.3d at 1226 (Ebel, J., concurring in part and dissenting in part)).

The majority rests this departure on two prongs. *First*, it attempts to bifurcate the
issues of title and scope and to cast our prior precedent as relating only to title. *See Kane
III*, 928 F.3d at 894 ("[T]hough SUWA and the United States had identical interests in the
title determination, they do not on scope."). This provides no basis for departing from

---

[5] The majority opinion states that it reads the lead opinion from *San Juan
County* as consistent with its conclusion that the scope of the rights-of-way was not
at issue in that case. *See Kane III*, 928 F.3d at 893–94. This reading ignores clear
statements to the contrary. *See San Juan Cty.,* 503 F.3d at 1171, 1206 (noting the
County claimed "the right-of-way must be sufficient in scope for vehicle travel"
and stating that "the pleadings define the case in a very narrow fashion [to include]
the existence or non-existence of a right-of-way and its length and its breadth").

*San Juan County* and *Kane I*. Contrary to the majority's characterization of *San Juan County* as relating exclusively to title, the district court characterized the issues presented in that case as relating to "the existence or non-existence of a right-of-way *and its length and its breadth*." *San Juan Cty.*, 503 F.3d at 1206 (emphasis added) (quoting the district court). Moreover, the majority's suggestion that the question of scope was not before the court until now is belied by the fact that, following our denial of SUWA's attempt to intervene in *Kane I*, the district court held a trial and determined the scope of the rights-of-way in question. As the majority concedes, "scope is inherent in the quiet title process," *Kane III*, 928 F.3d at 894, and as such has always been at issue in this case.

*Second*, the majority seeks to justify its departure from our precedent by referring to the change in presidential administration. Although such a change may, in certain circumstances, warrant intervention, this is not one of them. Simply put, a change in presidential administration does not affect the adjudication of property ownership. *See Kane III*, 928 F.3d at 905 (Tymkovich, J., dissenting). Unlike APA challenges concerning land *use* like those raised by the majority, a dispute over land *ownership* does not call upon the government to consider the wide array of interests the majority suggests are brought to bear and which subsequent administrations might weigh differently from prior ones. To the contrary, scope hinges exclusively on the pre-1976 usage of the roads in question. *See Kane II*, 772 F.3d at 1223 ("The scope of an R.S. 2477 right of way is limited by the established usage of the route as of the date of the repeal of the statute."). Any adjustments to scope from the pre-1976 uses must rest on what is "reasonable and

12

necessary . . . in the light of traditional uses to which the right-of-way was put." *Id.* at

1223. Present day interests that the United States might consider regarding the land's use

are not relevant to the scope of the rights-of-way in question. Accordingly, even

following the change in administration, there is no daylight between the United States'

interests and those of SUWA, and the majority's conclusion that the United States will

not adequately represent those interests is unfounded.[6]

The APA cases the majority cites fail to disturb this conclusion. In *WildEarth*

*Guardians v. United States Forest Service*, this court approved intervention where the

underlying issue concerned regulatory compliance with the National Environmental

Policy Act in approving methane venting from a coal mine. *See* 573 F.3d 992, 994 (10th

Cir. 2009). In *Utah Ass'n of Counties v. Clinton*, this court approved intervention where

the underlying issue concerned compliance with NEPA and the Federal Land Policy and

Management Act in the creation of the Grand Staircase Escalante National Monument.

*See* 255 F.3d 1246, 1248–49, 1256 (10th Cir. 2001). In both, the government conduct at

issue necessarily implicated a "broad spectrum" of interests. *WildEarth Guardians*, 573

---

[6] SUWA speculates the United States will fail to adequately represent its
interests, relying on statements from the parties that allegedly "support the notion
that the new administration may be more inclined to settle" than the previous one.
SUWA's Resp. to Pets. for Panel and En Banc Reh'g 5. This fails to account for
the reality that the United States has not settled this case after more than two and a
half years of a new administration, or explain why the parties did not further stay
proceedings after the previous stay expired or why extensive discovery and
depositions have continued in other pending road disputes between the parties. *See*
*Kane III*, 928 F.3d (Tymkovich, J., dissenting) at 905–06.

F.3d at 996; *Utah Ass'n of Counties*, 255 F.3d at 1255–56.  Neither case warrants the same result here for the simple reason that the government's defense of its title in a quiet title action does not implicate a similarly broad array of interests.  Unlike government decisions concerning how to use and regulate land, defending title only implicates the government's interest in maintaining land ownership.  Indeed, as the majority concedes, the United States seeks "'retention of the maximum amount of property' and will argue for 'the smallest widths it can based on the historical evidence.'"  *Kane III*, 928 F.3d at 888.  This aligns the government's interests with SUWA's and suffices to show adequate representation.

As additional justifications, the majority points to the fact that "the United States opposes SUWA's intervention motion," arguing this demonstrates "[the United States] may not adequately represent SUWA's interests."  *Kane III*, 928 F.3d at 895.  This was squarely addressed and dismissed in *San Juan County*.  503 F.3d at 1206 ("[W]e are not inclined to infer from the Federal Defendants' opposition to intervention that they will fail to vigorously resist the claim to an R.S. 2477 right-of-way.").  The majority also cites commentary from the United States implying that it might contemplate settlement in an effort to resolve the "12,000 of these claims . . . as quickly and efficiently as it can."  *Kane III*, 928 F.3d at 895.  But as the majority concedes, the prospect of settlement cannot support a finding that the United States may not adequately represent the interests involved.  *Id.* at 892 ("Nor is representation inadequate merely because the representative enters into a settlement, because any case, even the most vigorously defended, may

14

culminate in a settlement.").

Accordingly, SUWA has failed to show any change in circumstances warranting a reversal of our previous conclusion that the United States adequately represents SUWA's interests in this quiet title action.

Because the panel majority's opinion is inconsistent with Supreme Court precedent regarding Article III standing and our precedent on the right to intervention, I would have granted the petitions for rehearing en banc.